Marshall, C. J.
 

 The first problem to be considered relates to a question of procedure. The defendants in error contend that the error proceeding should have been instituted within 70 days after , the final order. The question is whether the entry of August 2, 1930, or the entry of November 13, 1930; was the final order which starts the running of the statute. On August 2,1930, the Court of Appeals tried the issues made by the pleadings filed prior to that time, and entered a decree upon the journal. That decree was a judgment, and if it had contained no qualifications, and if no further action had been taken by the court, it would have been the final order which would have started
 
 *230
 
 the running of the time within which error must have been prosecuted. By that entry the rights of the parties were completely adjudicated, except for the fact that in the entry itself leave was granted to Frank W. Geiger to file an amended answer and cross-petition on behalf of himself and others similarly situated. The interests of Geiger and such others were identical with those which had been pleaded by the corporation. Geiger was already a party to the litigation and had filed a pleading setting forth as a conclusion the same allegations as those already pleaded in more complete form by the corporation. The amendment filed by him contained nothing new but was merely a statement
 
 in extenso
 
 of the conclusions contained in a former pleading. The amendment was filed August 2, 1930, and on August 27, 1930, the plaintiff filed a motion to strike it from the files, and on November 6, 1930, this motion was overruled. A demurrer was then filed, and on November 13, 1930, the demurrer was sustained; it being stated in the entry that the amendment “sets forth no facts upon which new issues could be taken and that all issues raised therein have been heretofore adjudicated by the court,” and it being stated that Geiger did not desire to further plead.the relief prayed for in the cross-petition was denied. The same issues had again been considered and the same conclusions again reached.
 

 This action can be viewed in no other light than that immediately upon the first adjudication, and in fact as a part of it, a rehearing was granted and a rehearing in fact given. The decree of November 13th was the final order, unless it be declared that
 
 *231
 
 the statutory period for prosecuting error runs during the time the court is considering the case on rehearing. By the action of the court in granting the leave, and the action of the plaintiff in challenging the court’s action by filing a motion to strike the new pleading from the files, and the further action of challenging it by demurrer, and the further action of the court in overruling the motion and the demurrer, the defendants were lulled into a sense of security and led to believe that the decree of August 2, 1930, was not to be considered a finality, and it would be unfair and unjust to hold that the first decree nevertheless started the running of the limitation. The situation is materially different from a mere application for a rehearing or motion for new trial, which is purely voluntary on the part of the defeated litigant unaccompanied by any action or encouragement on the part of the court It is further contended that the corporation had already made the same defense as that made by Geiger, and that the corporation had acted with sincerity and good faith and was not guilty of either fraud or negligence in fairly representing the interests of the common stockholders. It is true that as a general proposition the corporation through its officers and directors controlled corporate action, but there are nevertheless two sufficient reasons why the stockholders should be permitted to act for themselves : First, the corporation had already announced its intention to abide by the decision of the court on August 2, 1930, and not to prosecute error therefrom. Second, the stockholders were the real parties in interest. The contract of sale made by the corporation had been legally ratified by the action
 
 *232
 
 of the shareholders, and it could make no difference to the corporation, as such entity, whether the distribution of the proceeds of the sale to stockholders was on one basis or another. The contract of sale is not challenged. The manner of distribution of the proceeds of the sale is seriously challenged. This was purely a controversy between the two classes of stockholders. It was also brought by a preferred stockholder to prevent the directors and officers from distributing any part of the proceeds to the common stockholders. The position of the corporation was that of a stakeholder or trusteeship, and the real contestants were the respective classes of stockholders.
 

 This decision of principles seems to be sound upon principle, but we are not without authority. The situation in the instant case is quite parallel to that in the case of
 
 Henry
 
 v.
 
 Jeanes,
 
 47 Ohio St., 116, 24 N. E., 1077, and
 
 Henry
 
 v.
 
 Jeans,
 
 48 Ohio St., 443, 28 N. E., 672. Upon principle and upon the authority of those cases, and without further discussion, we hold that the order of November 13, 1930, was the final order, and that this error proceeding was begun in time.
 

 Coming now to the substantive law, there is no issue of fact in this case. For the purposes of this decision, the facts of the answer are admitted. The only question is whether those facts state a defense. The ultimate question to be determined is whether any- part of the proceeds of the sale can be paid to the common stockholders until after the preferred stockholders are paid in full. The stock certificates issued to the preferred stockholders answer this question in the negative, unless the law permits the
 
 *233
 
 contract evidenced by that certificate to be modified by the failure of the preferred stockholders to make objection and the failure to give the notices required by Section 8623-72 (112 Ohio Laws, 37). It is therefore a question of the interpretation of that and other statutes, and of applying the law to the admitted facts. Section 8623-65, General Code, (112 Ohio Laws, 35), as it stood May 14, 1929, provides: “A corporation may, by action taken at any • meeting of its board of directors sell, lease, exchange or otherwise dispose of all or substantially all of its property and assets, including its good . will, -upon such terms and conditions and for such considerations, which may be money, stocks, bonds/ or other instruments for the payment of money o^ other property or considerations, as its board of directors deem expedient, when and as authorized by the affirmative vote of shareholders holding shares in the corporation entitling them to exercise at least two-thirds of the voting power on such a proposal, or such other proportion, not less than a majority, or vote by classes, as the articles may require, at a shareholders’ meeting called for that purpose. Notice of such meeting shall be given to all of the shareholders of record of the corporation whether or not they shall be entitled to vote thereat. * * * * Dissenting shareholders shall be entitled to relief in the manner and under the conditions hereinafter provided.”
 

 It will he observed that that section only makes | provision for sale of assets and that it contains no ■ provision relating to distribution among stock- [ holders. No other provision of the corporation code ' at that time made any specific provision for distri
 
 *234
 
 bution, other than that required by the articles of incorporation, the constitution and by-laws of the corporation, and the stock certificates. It is true that in Section 8623-15 (112 Ohio Laws, 14) and in Section 8623-72 (112 Ohio Laws, 37) the procedure is provided for altering the terms and provisions of the classes of outstanding shares, but this could only be done by an amendment to the articles of incorporation. Under neither of those sections, or any other sections, as the law then stood, could any alteration of the contract relations of stockholders among themselves be made as a part of the terms and conditions of a sale. The contract of sale made by the Ohio corporation to the Delaware corporation did not in terms provide for the distribution of the stock certificates of the Delaware corporation among the stockholders of the Ohio corporation. Manifestly a contract between two corporations could not legally make terms which would be violative of a contract between one of the corporations and its stockholders, or which would alter the contract relations of different classes of stockholders of such corporation as between such classes. The contract did recite that the number of shares to he received by the sale of the corporate assets was “on the basis of one share of such convertible participating stock for each of the 21,440 shares of the preferred stock of the vendor outstanding and one share of such common stock for each two of the 44,088 shares of common stock of the vendor outstanding.” This was far from being a binding agreement upon the stockholders of the Ohio corporation. The contract being between the two corporations, it could make no possible difference to the
 
 *235
 
 Delaware corporation how the distribution should be made. The Delaware corporation was only concerned in getting the assets of the Ohio corporation in consideration of the issuance to the Ohio corporation of a certain number of shares of the two classes of stock. The officers of the two corporations in making their contract must have so understood it, because it was stated in the last paragraph that the contract was subject to approval of the holders of three-fourths in amount of the outstanding capital stock of the vendor. The officers of the Ohio corporation must have so understood it, because a meeting was immediately called, and a notice to the stockholders requested the stockholders to affirmatively consent and agree to the distribution on that basis. More than three-fourths of the preferred stockholders did agree, but we are concerned in this controversy with the rights of those who did not agree. It is contended that their failure to appear at the meeting of May 14th and register their objection, and further failure to file notices and make demands for the fair cash value of their stock within 20 days after such meeting, operate as a consent and conclude them. Section 8623-72 (112 Ohio Laws, 37) in its pertinent parts provides:
 

 “Any shareholder * * # who shall vote against the proposal, and any shareholder of record who was absent from the meeting or who was not entitled to vote, may object in writing within twenty (20) days after the vote authorizing any such action, and at that time demand in writing the payment of the fair cash value of his shares. * * *
 

 “In case of disagreement * # * the dissatisfied shareholder may, within six months after such
 
 *236
 
 demand is made, but not thereafter, petition the court- of common pleas # *
 
 *
 
 to appoint, and thereupon such court shall appoint three appraisers to determine the fair cash value of the shares as aforesaid. * * * Each shareholder who does not object in writing and demand in writing payment of the fair cash value of his shares, in the manner and at the time hereinbefore provided, shall be concluded by the vote of assenting shareholders.”
 

 It will be seen that this section, like Section '8623-65 (112 Ohio Laws, 35), in terms applies only to a sale of the property of the corporation. It contains no reference to distribution.
 

 The contract of sale is governed by Sections 8623-65 and 8623-72, and that contract having been approved by more than three-fourths of the stockholders became a binding obligation upon the corporation, and all of the preferred stockholders who did not consent thereto, except William W. Keifer, as trustee, are concluded thereby. As to the sale, Section 8623-72 is an exclusive remedy for the minority stockholders. As a result of the objection of Keifer, trustee, and his notice given within 20 days, he is entitled to claim the fair cash value of the shares of preferred stock owned by him, to be determined in the manner set forth in the statute. As a result of the failure of the other plaintiffs in this action, who did not make an objection and did not give the notice within 20 days, they are not entitled to receive cash, but are only entitled to their proportionate share of the stock of the Delaware corporation which was paid to the Ohio corporation in return for the conveyance of the assets of the Ohio corporation. The certificate of preferred stock constitutes
 
 *237
 
 a contract between the holder and the corporation. The holders of common stock are privies to snch contract and bound by its terms. It might be more accurately stated that it is a tripartite contract between the corporation and the holders of the several classes of stock. Subscribers to common stock become by that act subscribers to the articles of incorporation, including the provisions for preferential payment to the preferred stockholders. This court has never been called upon to directly declare that a stock certificate is a contract between the holder and the corporation, but several cases have been determined in which that principle has been necessarily assumed. It has many times been declared by courts in other jurisdictions.
 
 Morris
 
 v.
 
 American Public Utilities Co.,
 
 14 Del. Ch., 136, 122A., 696;
 
 Pronick
 
 v.
 
 Spirits Distributing Co.,
 
 58 N. J. Eq., 97, 42 A., 586;
 
 Garey
 
 v.
 
 St. Joe Mining Co.,
 
 32 Utah, 497, 91 P., 369, 12 L. R. A. (N. S.), 554.
 

 It is not necessary to multiply authority on this point. It is a self-evident principle. It is conceded by counsel for the common stockholders in the instant case; and it was further conceded by them that any statute which would impair its obligations is invalid, but it is contended that notwithstanding the contractual character of the stock certificate the Legislature has provided in Section 8623-72, General ■Code, how the right shall be asserted, and that the remedy so provided is- exclusive; in other words, that this section relates to the remedy only. There are two answers to' this proposition. In the first place, any effort to change the relations of the two classes of stockholders as between themselves goes to the substance rather than to the remedy. In the
 
 *238
 
 second place, even if it related only to the remedy, it must result in awarding to the dissenting stockholder a fair cash value which will be the equivalent of his contract,
 
 vis.,
 
 the par value of the certificate plus all unpaid dividends. The Legislature could only have power to impose an exclusive remedy upon unwilling and nonconsenting stockholders, if such stockholders receive the full par value of the stock, unless the entire assets of the corporation are insufficient to realize such full par value. The articles of incorporation having provided that the common stockholders shall receive nothing until after payment in full to the preferred stockholders, and the statute on May 14, 1929, containing no provision relating to distribution otherwise than in strict accordance with the stock certificates and the articles of incorporation, it must be held that distribution in any other manner, or which would not give to the preferred stockholders all assets up to the amount of the par value of their stock, would be an impairment of the obligation of the contract. It is claimed by the common stockholders that the agreement, in conjunction with the notices issued to stockholders, and the “deposit agreement” submitted for the signatures of the stockholders, constituted the transaction as one of sale and distribution. We are unable to so construe the contract. But even if it should be so construed, there is no statutory provision for requiring a minority of the preferred shareholders to submit the question of their priority to a determination by two-thirds of the voting power of the corporation. The amendments to the statute, which became effective July 23, 1929 (113 Ohio Laws, 443, 446), relate to distribution as well as
 
 *239
 
 sale, and if this transaction had occurred after July 23j 1929, there would have been authority for submitting the question of distribution to a stockholders’ meeting. Whether the amendment effective July 23, 1929, is valid, as not impairing the obligation of a contract, we have neither considered nor decided. That question is not before the court at this time. Counsel have argued at length both orally and in brief the power reserved in the legislature to alter, amend, or repeal the general laws relating to the organization of private corporations in Ohio, as conferred by Section 2, Article XIII, of the Ohio Constitution; but inasmuch as we have reached the conclusion that the manner of distribution was not regulated by the law as it existed on May 14, 1929, we need not at this time consider that question. The decree .entered by the Court of Appeals enjoins any distribution, without first distributing and paying to the preferred stockholders the sums of the par value of their stock together with the dividends accrued since January 1, 1927, and 6 per cent, per annum in cash up to and including May 17, 1929, and further empowers the American Seeding Machine Company to sell such amounts of the stock of the Delaware corporation in its hands as may be necessary to make the distribution to the preferred stockholders.
 

 In so far as the decree enjoins the company from making distribution of any part of the assets to common stockholders, it will be affirmed, but it must be modified to the extent that William W. Keifer, as trustee, is entitled to receive the fair cash value of his preferred stock on May 17, 1929, and that all other preferred stockholders are entitled to hold in
 
 *240
 
 preference to the common stockholders all of the common stock received by the Ohio corporation from the Delaware corporation. So far as this record discloses, the Ohio corporation has not yet been dissolved. It is still the owner and holder of the shares of stock received from the Delaware corporation. When an order of dissolution has been effected, Section 8623-84 (113 Ohio Laws, 452) will apply, and the company may then distribute all of the stock ratably among all the-preferred stockholders of the Ohio corporation. On the other hand, without waiting for dissolution, it is in the power of the corporation to make a sale of all of the shares of stock in the Delaware corporation, such sale being subject to ratification by a meeting of stockholders called for that purpose, if two-thirds of the voting power approve such sale. In the event a sale of such stock should be made, or in the event of attempted distribution to common stockholders, under present law, any preferred stockholder may again object and give the notice and make the demand for the cash value, under the provisions of Section 8623-72.
 

 The decree and judgment of the Court of Appeals will be modified, but if the corporation and the common stockholders find it more advantageous to carry out the decree of the Court of Appeals, rather than the modification, as herein outlined, that procedure may be followed.
 

 Judgment of the Court of Appeals modified.
 

 Jones, Matthias, Day, Kinkade and Robinson, JJ., concur.
 

 Alien, J., not participating.