## LEHIGH STRUCTURAL STEEL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7852.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 9, 1942.

Decided Mar. 27, 1942.

Floyd F. Toomey, of Washington, D. C. (Ellsworth C. Alvord, of Washington, D. C., on the brief), for petitioner.

Newton K. Fox, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before BIGGS, MARIS, and JONES, Circuit Judges.

MARIS, Circuit Judge.

Lehigh Structural Steel Company, the petitioner, is a Delaware corporation, having its principal office in Pennsylvania. In 1920 the petitioner's certificate of incorporation was amended to authorize the issuance of 5,000 shares of preferred stock bearing an 8% dividend rate. The amended certificate of incorporation and the share certificates contained the following provision:

"A sinking fund for the retirement by purchase of the preferred stock shall be created out of the net profits that shall remain after deducting therefrom any accrued dividends on the preferred stock, and for this purpose there shall be credited to an account to be called the preferred stock sinking fund account on January 1, 1922, and at the beginning of each calendar year thereafter out of the remaining net profits of the previous calendar year after providing for the payment of the full dividend for such year and unpaid dividends for previous years or year on the preferred stock until the whole of the preferred stock issued and outstanding shall have been purchased or retired, the sum equivalent to 5% of the outstanding preferred stock at the beginning of the preceding calendar year before any dividends shall be paid upon any other stock. * * *"

In 1933 a plan was proposed to the preferred shareholders by the petitioner's Board of Directors to reduce the fixed capital charges by redeeming 20 percent of the outstanding preferred stock and by reducing the dividend rate on the balance from 8% to 6%. This plan was approved by the preferred shareholders. In the same year the charter was amended authorizing the new preferred stock. The shares were issued in accordance with the plan and the amended charter. The charter as amended

and the new 6% preferred stock certificates contained a provision concerning the sinking fund identical with the one which we have quoted. In 1936 and 1937 the petitioner transferred to the preferred stock sinking fund out of its annual earnings amounts equal to 5% of the preferred stock outstanding in those years. The petitioner's accumulated surplus on December 31, 1935, exceeded its adjusted net income for 1936 and its accumulated surplus on December 31, 1936, exceeded its adjusted net income for 1937. In its income tax returns for the taxable years 1936 and 1937 the petitioner determined the surtax due upon its undistributed net profits by taking credit for so much of its profits for those years as it had paid into the sinking fund for the retirement of its preferred stock. The Commissioner ruled that the petitioner was not entitled to take the claimed credits and assessed a deficiency. The Board sustained the assessment. 44 B.T.A. 422.

Section 14 of the Revenue Act of 1936 imposes a surtax upon corporate undistributed profits, 26 U.S.C.A. Int.Rev.Acts, page 823. Section 26(c)(1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836,[1] permits the corporation to compute its undistributed net income by taking credit for so much of the income as it is prohibited from paying its stockholders in the form of dividends by "a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends."

The petitioner claims the credit by virtue of the provision for the payment into the sinking fund of income which would otherwise be paid out as dividends to the owners of the common stock. It is undisputed that the certificates are in writing, that they were executed by the petitioner prior to May 1, 1936, and that they expressly prohibit the payment of dividends to the holders of the common stock until a certain portion of the petitioner's net income has been paid into the preferred sinking fund. The sole question is whether the certificates are "contracts" within the meaning of Section 26(c)(1) of the Revenue Act of 1936.

A certificate of stock is primarily the evidence of the stockholder's ownership of an interest in the corporation. Baker v. Bankers Mortgage Co., 15 Del.Ch. 209, 135 A. 486; Smith v. Universal Service Motors Co., 17 Del.Ch. 58, 147 A. 247. Where the terms of the respective rights and obligations of the corporation and the stockholders are set forth in the certificate of stock it becomes also a contract between corporation and stockholder. Thus in Warren v. King, 108 U.S. 389, 396, 2 S.Ct. 789, 795, 27 L.Ed. 769, Mr. Justice Blatchford said "The rights of the holders of preferred stock in this case must be determined by the language of the stock certificate." It was squarely ruled in Geiger v. American Seeding Mach. Co., 124 Ohio St. 222, 177 N.E. 594, 599, 79 A.L.R. 614, that a stock certificate is a contract between the corporation. See, also, 11 Fletcher Cyclopedia Corporations, Perm.Ed., § 5295, p. 730; In re Culbertson's, 9 Cir., 1932, 54 F.2d 753; Collins v. Portland Electric Power Co., D.C.Or.1925, 7 F.2d 221; Continental Ins. Co. v. Minneapolis, St. P. & S. S. M. R. Co., 8 Cir., 1923, 290 F. 87, 31 A.L.R. 1320; Hackett v. Northern Pac. R. Co., C.C.N.Y.1905, 140 F. 717. The certificate of stock must, of course, be construed in harmony with state laws and the corporate charter. Gaskill v. Gladys Belle Oil Co., 16 Del.Ch. 289, 146 A. 337. We conclude that the stock certificate evidences the contract between the parties. It follows that if the words used in the statute are to be construed literally the petitioner is entitled to the claimed credits.

The Commissioner takes the position, however, that the words of the statute may not be construed literally but must be restricted to routine contracts dealing with ordinary debts. We are asked to read this limitation into the statute upon the authority of the decision in Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29. The decision in

---

[1] "In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account."

the Northwest Steel Rolling Mills case was that a corporation which is prohibited by state law from paying dividends is not entitled to the credit allowed by Section 26(c)(1). The court reached this decision by examining the language used in the section and by the legislative history of its adoption. It concluded that the language used in Section 26(c)(1) does not apply to prohibition of dividend payments by state law since the state law is not a contract. This conclusion was also supported by the legislative history of the act which shows conclusively that Congress did not intend to give corporations with a capital deficit relief from the surtax on undistributed profits. The court concluded also that the language used in Section 26(c)(1) does not apply to the prohibition of dividend payments by state law incorporated in the corporate charter by implication since the prohibition is not expressly written in the charter. In answer to the contention that the charter was a written contract the court stated that although the charter is a contract insofar as it grants rights, properties, privileges and franchises, the provision which requires the corporation to conform to state law is not contractual. Essentially what prohibited the payment of dividends was not the charter but the state law. In answer to the contention that the certificate of stock represented the contract the court stated that what it had said as to the charter applied to the certificate of stock. This method of disposing of the argument based upon the certificate of stock was most logical, since the certificate of stock, just as the charter, was silent as to the restraint upon the payment of dividends and could be said to contain a prohibition only if the state law were read into it. We find nothing in the opinion to warrant the argument that neither a charter nor a certificate of stock can ever be the kind of "written contract" which is meant by Section 26(c)(1).

We are clear that nothing ruled in the Northwest Steel Rolling Mills case is dispositive of the present situation. In the present case the parties reached an explicit understanding, as is evidenced by the amendments to the certificate of incorporation proposed by the petitioner's Board of Directors, accepted by the stockholders and filed with the Secretary of State of Delaware. The agreement was thereafter set forth in detail in the stock certificates, each of which was executed by the corporation

and each of which dealt expressly with the payment of dividends. Finally these writings were delivered by the corporation to the parties with whom it was contracting, namely, the owners of its stock. We conclude that the stock certificates which were issued by the petitioner prior to May 1, 1936, meet the statutory test. The petitioner was, therefore, entitled to the credits claimed.

The decision of the Board of Tax Appeals is reversed.