## PHILADELPHIA RECORD CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8438.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 23, 1943.

Decided Nov. 1, 1944.

614

Jerome J. Rothschild, of Philadelphia, Pa. (Fox, Rothschild, O'Brien & Frankel, of Philadelphia, Pa., on the brief), for petitioner.

Muriel Paul, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The petitioner was incorporated under the laws of Pennsylvania in June 1928. The Tax Court found as facts that the corporation in an amendment to its charter, in its by-laws and in its certificates of stock, all prior to May 1, 1936, was prohibited from paying dividends on its common stock until there had been set apart in a sinking fund a sum of money, out of its surplus profits, on or before July 1, 1934, and on or before July 1 of each succeeding year, an amount equal to 2½% of the maximum par amount of its preferred stock theretofore issued, whether or not then outstanding, until all preferred stock was retired;[1] that prior to, and including the taxable year, 16,638 shares of its preferred

---

[1] The pertinent sections of the by-laws are:

"(c) On or before July 1, 1934, and annually on or before the first day of July in each year thereafter, so long as any of the Preferred Stock shall be outstanding, the Directors of the corporation shall set apart for and credit to a Sinking Fund Account (known as the Preferred Stock Sinking Fund) out of the surplus profits arising from the business of the corporation, a sum of money equivalent to not less than two and a half per cent (2½%) of the maximum par amount of Preferred Stock theretofore issued whether or not then outstanding. Provided, however, that the Preferred Stock Sinking Fund shall be set apart from and only from the surplus profits arising from the business of the corporation that remain after full cumulative dividends on the Preferred Stock outstanding shall have been declared and paid or provided for including all dividends accrued or in arrears, and the First Preferred Stock Sinking Fund Obligation shall be cumulative, so that if in any year or years said remaining surplus profits shall be insufficient to permit the full amount so required, as aforesaid, to be set aside, or if for any reason such full amount shall not be set aside, the deficiency shall be made good out of the surplus profits of the succeeding year or years before any profits shall be declared paid upon or set apart for the Common Stock.

"All moneys required to be set aside, pursuant to the provisions of this clause (c) shall be applied as soon as practicable, but within twelve months from the dates on which they have been set aside, to the purchase of Preferred Stock at public or private sale, if obtainable, at not exceeding the redemption price hereinafter fixed. When and to the extent that such moneys are not so applied they shall be applied as soon as practicable to the redemption of Preferred Stock, as hereinafter provided.

"Preferred Stock redeemed or purchased under the foregoing provisions shall be retired and shall not be reissued and no Preferred Stock shall be issued in lieu thereof or in exchange therefor.

"(d) Whenever but not until cumulative dividends as aforesaid on the Preferred Stock shall have been paid for all past quarterly dividend periods, and full dividends upon such stock for the current quarterly dividend period shall have been declared and paid or provided for, and whenever but not until all past due amounts required to be set apart for and credited to the Preferred Stock Sinking Fund shall have been so set apart therefor and credited thereto, such dividends as may be determined by the Board of Directors may be declared and paid on the Common Stock from time to time out of the remaining surplus profits of the Corporation; and in the event of the declaration of any such dividends the holders of the Common Stock shall be entitled

stock had been issued and that the amount of money required to be set apart each year, including the taxable year, was $41,595; that the amounts to be so set apart were to be used for the purchase and retirement of its preferred stock until all of such stock was retired; that throughout the taxable year there was unretired outstanding preferred and common stock; and that neither during the taxable year nor at any time prior to January 1, 1938, had the full amount required to be set apart in a sinking fund been so set apart in any account entitled "Sinking Fund Cash Account," nor had a sum or sums equal to the periodic credits made on its books in an account entitled "Sinking Fund Reserve Account" been so set apart. The sole question involved is whether the taxpayer is entitled to a credit in the amount of its adjusted net income in the taxable year (1937) under Section 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836.[2]

■ The Tax Court decided that the restrictions contained in the petitioner's amended charter, by-laws and certificates of stock, on the payment of dividends on the common stock of the petitioner, did not entitle the petitioner to such a credit. This holding is directly contrary to the decisions of this court commencing with Lehigh Structural Steel Co. v. Commissioner, 3 Cir., 127 F.2d 67. That case was followed by Eljer Co. v. Commissioner, 134 F.2d 251, where this court said at page 255: "The question whether a certificate of stock which contains an express provision prohibiting the payment of dividends is such a contract as was intended by Congress to be within the purview of Section 26(c) (1) of the Revenue Act of 1936 was answered by us in the affirmative * * * and is no longer open in this Circuit."

In Budd International Corporation v. Commissioner of Internal Revenue, 143 F. 2d 784, 787, the question was again before this court. The amended articles of incorporation and the preferred stock certificates in that case had much the same language as the amended charter and preferred stock certificates here involved. Judge Maris, speaking for this court, said: "The amended articles of incorporation and preferred stock certificates thus do embody a contract prohibiting the taxpayer from paying dividends to the holders of the common stock until the taxpayer has paid into a sinking fund each year an amount equal to 3% of the preferred stock. It follows that to the extent of the sinking fund payment the taxpayer was entitled to a credit in computing its undistributed net income and that the Board erred insofar as it ruled that Section 26(c) (1) of the Revenue Act of 1936 did not entitle the taxpayer to such a credit."

On a rehearing in the Budd case, reported with the main opinion, supra, the court, again speaking through Judge Maris, said: "It follows, therefore, that when a corporate taxpayer was under contractual obligation prior to May 1, 1936 to pay a portion of its profits into a sinking fund which it might not use for the payment of dividends it was entitled to an equivalent reduction in the amount of its undistributed net income subject to surtax." See also Monarch Theatres v. Helvering, 2 Cir., 137 F.2d 588. It is, therefore, settled in this circuit that restrictive provisions in a corporate charter, by-laws and certificates of stock as are present in the instant matter, constitute a written contract within Section 26 (c) (1) of the 1936 Revenue Act.

The Tax Court also held that "Petitioner obviously was able financially in the taxable year to pay into a sinking fund the

to the exclusion of the holders of the Preferred Stock to share ratably therein."

The amendment to the charter and the certificates of stock, both preferred and common, contain provisions identical with those of the by-laws above quoted.

2 "Sec. 26. Credits of Corporations
"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax— * * *
"(c) Contracts Restricting Payment of Dividends.
"(I) Prohibition on payment of dividends. An amount equal to the excess

of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account."

requisite amount for that year," and from this, again reached the conclusion that the petitioner is not entitled to the credit claimed.

The petitioner did not technically set apart any of its funds directly in a sinking fund. It accomplished the same object, however, by purchasing shares of its preferred stock. We agree with the Tax Court, that the sum thus expended complied, to the extent of the cost of the stock, with the requirements of the amended charter, by-laws and certificates of stock as to setting money aside in a sinking fund. The taxpayer does not seriously question the resultant situation. There is a dispute as to the cost to the taxpayer of that preferred stock so purchased. At the end of 1937, the taxable year, there had been debited to the "sinking fund" account a total amount of $159,043.90 as the cost to the taxpayer of the 1918 shares of its preferred stock theretofore purchased by it. That over-all figure was the gross cost of the stock. There was a credit of $3,720.-69 of that amount returned to the taxpayer by way of accrued dividends on the shares of stock so purchased so that the net cost of the stock was $155,323.21. It is conceded that the sinking fund reserve credit entry of $166,380 is the true amount. This represents the total sum required by the corporate contract to be set aside by the end of 1937 for the purchase of the preferred stock. Taking the corporation's purchases of preferred stock as partial compliance with the sinking fund provisions, the taxpayer still failed to meet its sinking fund account requirement by the sum of $11,056.79. That deficit was found by the Tax Court to be $7,336.10 as that court did not take into consideration the credit item of $3,720.69 returned to the taxpayer as accrued dividends.

The Tax Court decided that the petitioner was able to pay the balance, as it found, of $7,336.10, into the sinking fund in the year 1937 and so satisfy its corporate obligation. We do not see that the record warrants such conclusion. There is no finding of bad faith, tax evasion motive, or even question of the business management of the taxpayer. The Tax Court did, in its opinion, find that Mr. Stern, the president of the company, was inaccurate in stating that it was the policy and record of the corporation to maintain current assets in twice the amount of its current liabilities, where in fact that had not been done. Accepting this (though such might

well have been the company policy, with the practical realization of it impossible because of its financial situation), that statement does not in any way change the detailed figures, upon which the witness based his testimony that the company in 1937 was not financially able to complete its sinking fund payment.

Examination of the petitioner's full balance sheets, which are in evidence, reveals that the status of the corporation was palpably weak during that period. It has never paid any dividends on common stock and there were no dividends on the preferred down to March 30, 1936. The arrearages of preferred dividends were settled at that time, not because of the ability of the company to pay, but because of the then existing crisis in its affairs which would have meant a shift in voting power from the common to the preferred by reason of failure to pay the preferred dividends. The settlement itself was for 25% of the actual arrearages and was paid for principally by common stock of the corporation, instead of cash. The taxpayer's cash declined steadily from $220,344. at the end of 1935 to $119,446. at the end of 1937. At the end of the taxable year its current liabilities were $1,029,675.65. In addition, it owed $36,099.60 on long term machinery notes and $342,500. on debentures due 1938 and 1940. Its current assets were $1,286,-771.35. It showed a capital and surplus of $2,443,053 (including the earned surplus figure of $637,829). The petitioner strongly stresses that these capital assets included $1,841,810.55 made up of

| | |
|---|---:|
| Organization expenses | $ 25,795.15 |
| Life insurance premiums | 85,778.00 |
| Deferred promotion costs | 76,498.08 |
| Improvements to leased property (which under the lease revert to the landlord) | 150,256.56 |
| Cash in closed banks | 7,946.00 |
| Good will, franchise and circulation | 1,495,436.76 |
| | $1,841,810.55 |

The December 31, 1937 balance sheet shows that the corporation's total capital and surplus was $2,443,053.24. The outstanding 14,720 shares of preferred, with a par value of $100 a share, totalled $1,-472,000. If the "good will" and the other questionable items set out in the above list are eliminated from the total surplus and capital, there is a balance remaining of $701,243, which is less than half of the

outstanding preferred stock, leaving nothing for the common and wiping out the surplus entirely. From this it is apparent, as contended, that all of the surplus and a substantial part of the capital is represented by "good will" and the other assets above set out.

The corporate picture disclosed by the books supports the testimony of Mr. Stern. The evidence in the case consists of the company documents, bookkeeping records and Mr. Stern's testimony. From the record it is evident that the taxpayer, down to the end of 1937 at least (the period with which we are concerned), had not been able to establish itself financially. In the judgment of the taxpayer, it was unable to completely comply with the sinking fund requirement during the tax year. It did take care of it in part but lacked some $11,000 of full performance. There is nothing to indicate that this situation arose from anything else but the sincere business judgment of the corporate management. The fact that the company in its tax return for 1937 originally made no claim for credit against its adjusted net income, but solely for dividends actually paid plus the annual sinking fund requirement of $41,595. is of some assistance in indicating its good faith in this proceeding and that its present theory is not part of any prearranged plan to avoid taxes.

■ Section 26 (c) (1) is to be strictly construed, but with this taxpayer showing a valid corporate contract under it and then fairly establishing itself within the terms of the section, the contention of the taxpayer should be upheld unless there is to be arbitrary interference with the business judgment of the corporation which is not attacked. Respondent cites L. O. Koven & Brother v. Commissioner, 47 B. T. A. 467, affirmed per curiam, 3 Cir., 145 F. 2d 327, in support of the proposition that the taxpayer's contract obligation as to the preferred stock could have been satisfied out of the surplus. We do not see how that decision is applicable to the facts here. The present problem is more akin to Auto Interurban Co. v. Commissioner, 40 B. T. A. 161. There the same argument was made by the Commissioner, namely, that the stock could have been retired out of the surplus. The Tax Court, in holding that there was no legal obligation on the part of the taxpayer to so retire the stock, said at page 165, that the case was not one in which "a corporation, with cash and liquid assets greatly in excess of both its current obligations and its secured obligations which were by written contract to be retired before the payment of dividends, delayed the retirement of such securities for an unreasonable length of time for the purpose of obtaining the credit provided for by Section 26 (c) (1) of the Act of 1936." In Maumee Malleable Castings Co. v. Commissioner, 44 B. T. A. 263, also involving Section 26 (c) (1), the Tax Court said at page 268: "Petitioner's failure to pay off the remaining balance of principal due under the bond until shortly after the end of the taxable year appears to have been actuated by sound business purposes."

■ We have no intention of substituting our judgment as to the facts for that of the Tax Court but find no substantial evidence supporting the conclusion of that court. Under the Lehigh Structural Steel opinion and the cases following it, supra, Section 26 (c) (1) of the Revenue Act of 1936 is applicable and the taxpayer comes within its terms. The Tax Court does not find any fraud, improper tax motives, or even bad business judgment on the part of the taxpayer. The bookkeeping records of the corporation uphold the testimony of the only witness, the operating head of the petitioner, to the effect that the financial situation of the corporation did not justify it completing its required payment to the sinking fund in the taxable year, 1937. Under the particular facts of this case, the taxpayer is entitled to the credit it claims.

The decision of the Tax Court is reversed.

BIGGS, Circuit Judge (concurring in part and dissenting in part).

Though adhering to the views expressed by this court in Lehigh Structural Steel Co. v. Commissioner, 127 F.2d 67, and Eljer Co. v. Commissioner, 134 F.2d 251, I must dissent in part from the conclusions reached by the majority. The Tax Court found that the petitioner possessed the financial ability to set aside the sum of "$7,336.10" in addition to the $55,308.65 expended by it during 1937, which would have freed the petitioner of the contract restrictions against paying dividends on its common stock. Whether or not the petitioner possessed that financial ability was strictly a question of fact and its determination was peculiarly within the province of the Tax Court. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239; Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 57 S.Ct. 324, 81 L.Ed. 491.

Cf. Commissioner v. Oswego Falls Corp., 2 Cir., 137 F.2d 173, 176. This court substitutes its judgment for that of the Tax Court in determining that question. In my opinion this constitutes error.

I should be in favor of affirming the decision of the Tax Court were it not for the fact, clearly apparent from the record, that the tribunal committed error in finding that only the sum of $7,336.10 was required to be expended or set aside by the petitioner for the purchase or retirement of its preferred stock in order to fulfill its contract. The additional amount required was not $7,336.10 but $11,056.79. The decision should be reversed and the cause remanded in order that the tax tribunal may determine whether the petitioner was financially able to make the additional payment or to set aside the larger sum referred to. The difference in amounts may not be treated as immaterial. See Auto Interurban Co. v. Commissioner, 40 B. T. A. 161; Trianon Hotel Co. v. Commissioner, 44 B. T. A. 1073, 1081; Kilby Steel Co. v. Commissioner, 41 B. T. A. 1237.