## HERCULES GASOLINE CO., INC. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 93. Argued December 6, 1945.—Decided December 17, 1945.

*Mr. Melvin F. Johnson,* with whom *Mr. Joseph H. Jackson* was on the brief, for petitioner.

*Mr. Joseph S. Platt,* with whom *Solicitor General McGrath, Assistant Attorney General Clark, Messrs. Sewall Key, J. Louis Monarch, Walter J. Cummings, Jr.* and *Mrs. Maryhelen Wigle* were on the brief, for respondent.

Mr. Justice Black delivered the opinion of the Court.

This case requires us to construe § 26 (c)[1] of the undistributed profits tax law, 49 Stat. 1648, enacted by Congress in 1936. The undistributed profits tax, which was not continued by Congress after 1938, was a surtax at graduated rates upon corporate profits not distributed during the tax year by way of dividends. Section 26 (c)

---

[1] "Sec. 26. Credits of Corporations.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

.         .         .         .         .

(c) Contracts Restricting Payment of Dividends.—

(1) Prohibition on payment of dividends.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

(2) Disposition of profits of taxable year.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word 'debt' does not include a debt incurred after April 30, 1936.

(3) Double credit not allowed.—If both paragraph (1) and paragraph (2) apply, the one of such paragraphs which allows the greater credit shall be applied; and, if the credit allowable under each paragraph is the same, only one of such paragraphs shall be applied."

allowed credits designed to afford relief where the payment of dividends is prevented by certain contract provisions. Subdivision (c) (1) of the section allowed such a credit where a distribution of earnings would violate a *"provision of a written contract executed by the corporation . . . which provision expressly deals with the payment of dividends."* (Italics supplied.) Subdivision (c) (2) allowed a credit where "earnings and profits of the taxable year . . . [are] required (*by a provision of a written contract executed by the corporation . . ., which provision expressly deals* with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge *of a debt,* or to be irrevocably set aside within the taxable year for the discharge *of a debt."* (Italics supplied.) Petitioner claimed a credit under § 26 (c) (1), but in assessing the deficiency for 1937 the Commissioner rejected this claim. The Tax Court sustained the Commissioner and its judgment was affirmed by the Circuit Court of Appeals. 147 F. 2d 972. We granted certiorari because of conflicting determinations by the Circuit Courts as to the scope of these credit provisions.[2]

Petitioner, a Delaware corporation, admits liability as transferee of the assets of the Hercules Gasoline Company, Inc., a Louisiana corporation, which was dissolved in 1939. Article V of the original charter of the transferor authorized the issuance of non-par common stock and of preferred stock at $50 par value. The preferred stock was entitled "to cumulative dividends at the rate of 8% per annum . . . in preference and priority to any payment of any dividend on the common stock for such year." The charter further provided that "there shall be no dividend on the common stock until all of the preferred stock

---

[2] *Lehigh Structural Steel Co.* v. *Commissioner,* 127 F. 2d 67; *Philadelphia Record Co.* v. *Commissioner,* 145 F. 2d 613.

has been retired, redeemed and discharged." All certificates of preferred stock contained the following provision: "For Rights and Voting Powers of Preferred Stock See Article V of Charter." The petitioner contends that these preferred stock certificates constituted contracts executed by the corporation which expressly prohibited the payment of dividends while these shares were outstanding and that petitioner is therefore entitled to the credit allowed under Subdivision (c) (1).

We think that the preferred stock certificates are not the kind of contracts which entitle a corporation to allowance of credit under subdivision (c) (1). In our view, that subdivision must be read in the light of § 26 (c) and the Act as a whole and, when thus read, is confined to contracts made with creditors and does not extend to restrictions imposed within the body corporate. In *Helvering* v. *Northwest Steel Mills,* 311 U. S. 46, the question before us was whether § 26 (c) (1) allows a credit where the payment of dividends is prohibited by statute. In construing § 26 (c), we stated:

"That the language used in § 26 (c) (1) does not authorize a credit for statutorily prohibited dividends is further supported by a consideration of § 26 (c) (2). By this section, a credit is allowed to corporations contractually obligated to set earnings aside for the payment of debts. That this section referred *to routine contracts dealing with ordinary debts and not to statutory obligations is obvious*—yet the words used to indicate that the section had reference only to a 'written contract executed by the corporation' are identical with those used in § 26 (c) (1). *There is no reason to believe that Congress intended that a broader meaning be attached to these words as used in § 26 (c) (1) than attached to them under the necessary limitations of 26 (c) (2)."* 311 U. S. 46, at 49–50. (Italics supplied.)

We thus held that § 26 (c) (1) is limited to contracts involving ordinary obligations to creditors and since preferred stockholders are not creditors, *Warren* v. *King*, 108 U. S. 389, 399, § 26 (c) (1) does not apply here.

Petitioner contends, however, that our construction of § 26 (c) (1) was erroneous but for reasons given in the *Northwest Steel* case we think it was correct and adhere to it. Our construction finds further support in § 26 (c) (3) which, in order to prevent "Double credit," provides that in the event both subdivisions (c) (1) and (c) (2) apply, "the one of such paragraphs which allows the greater credit shall be applied; and, if the credit allowable under each paragraph is the same, only one of such paragraphs shall be applied." Congress having thus made the relief obtainable under (c) (1) and (c) (2) mutually exclusive has indicated that it considered the two subdivisions as interdependent. Congress therefore intended to cover the same type of contract, namely a contract with creditors, in both subsections and not to extend subdivision (c) (1) to intra-corporate contracts while subdivision (c) (2) was to cover contracts with creditors only. Moreover, statements made in the course of the Congressional debate [3] refer to § 26 (c) as a whole, as providing for the relief of corporations prevented from paying dividends by contracts involving the payment of debts. No other view of the Section would be in keeping with the policy behind the undistributed profits tax. That tax was designed to reach profits held by the corporation which as a consequence could not be taxed as dividends in the hands of stockholders. An intra-corporate agreement is simply one way of keeping profits in the corporation's treasury so that the tax collector cannot reach

---

[3] See for illustration the statement by the Hon. Samuel B. Hill, 80 Cong. Rec. 6004.

them.[4]  To hold that such an agreement entitled the corporation to tax credit would defeat the very purpose of the undistributed profits tax.[5]  The rejection of petitioner's claim for tax credit was proper.

*Affirmed.*

Mr. Justice Burton dissents.

Mr. Justice Jackson took no part in the consideration or decision of this case.

Mr. Justice Reed, dissenting.

Accepting *Helvering* v. *Northwest Steel Mills*, 311 U. S. 46, completely, I am unable to agree that this contract with preferred stockholders was other than a "routine contract dealing with ordinary debts."  Certainly this is not an instance of a "statutory obligation," which are the words used in the *Northwest* case to describe the antithesis of the contract covered.  "Routine" and "ordinary," as

---

[4] See *Warren Telephone Co.* v. *Commissioner*, 128 F. 2d 503, 506. Here there was nothing in the agreement that absolutely prohibited the payment of dividends.  During 1937 and 1938 transferor had outstanding 1,294 shares of preferred stock of a total par value of $64,700.  These shares were all retired in 1939.  Had they been redeemed in 1937 there would have been nothing in the agreement preventing the distribution of earnings.  Consequently it does not clearly appear that there was any provision in the agreements absolutely prohibiting the payment of dividends.  Cf. *Dr. Pepper Bottling Co.* v. *Commissioner*, 45 B. T. A. 540; *Staley Manufacturing Co.* v. *Commissioner*, 46 B. T. A. 199, 205.

[5] The Board of Tax Appeals and later the Tax Court have consistently held that § 26 (c) (1) does not cover the type of agreement here involved.  *Thibaut & Walker Co.* v. *Commissioner*, 42 B. T. A. 29; *Eljer Co.* v. *Commissioner*, decided Dec. 4, 1941, 1941 P–H B. T. A. Memorandum Decisions, Par. 41,533; *Budd International Corp.* v. *Commissioner*, 45 B. T. A. 737; *Bishop & Babcock Manufacturing Co.* v. *Commissioner*, 45 B. T. A. 776; *Philadelphia Record Co.* v. *Commissioner*, decided January 23, 1943, 1943 P–H T. C. Memorandum Decisions, Par. 43,038.

used in *Northwest,* do not imply to me anything more than an express contract, executed in accordance with § 26 (c) (1).

The exemption provisions of § 26 (c) make no exceptions because the debt of the corporation is owned by a stockholder. If such an exception is to be deduced from the purpose behind the words of the section, it should not be applied to such preferred stockholders as these because their interest is like that of a creditor. As I believe the statutory requirements are met, I should reverse.[1]

The CHIEF JUSTICE joins in this dissent.

---

[1] See in accord, *Lehigh Structural Steel Co.* v. *Commissioner,* 127 F. 2d 67; *Budd International Corp.* v. *Commissioner,* 143 F. 2d 784; *Philadelphia Record Co.* v. *Commissioner,* 145 F. 2d 613; *Rex-Hanover Mills Co.* v. *United States,* 53 F. Supp. 235. See *Eljer Co.* v. *Commissioner,* 134 F. 2d 251, 255.