DR. PEPPER BOTTLING COMPANY OF MEMPHIS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101626.   Promulgated October 31, 1941.

*Sylvanus W. Polk, Esq.*, for the petitioner.
*Frank M. Thompson, Esq.*, for the respondent.

### OPINION.

DISNEY: The Commissioner determined a deficiency in petitioner's income tax liability for 1937 in the amount of $6,428.62. The only question involved is whether the petitioner is entitled to a credit of $29,924.38 under section 26 (c) (1) and (2) of the Revenue Act of 1936, relating to contracts restricting dividends.

The facts were stipulated and are found as stipulated. We set forth herein only such facts as are pertinent.

The petitioner is a Tennessee corporation, with its principal office and place of business at Memphis, Tennessee, and the return was filed with the collector for the district of Tennessee.

On June 27, 1933, the petitioner entered into a written agreement with the National Bank of Commerce at Houston, Texas, acting as trustee for a group of creditors. The agreement was in the form of a deed of trust to the bank as trustee acknowledging and securing the payment of debts in the aggregate amount of $37,086.30, evidenced by a series of 59 notes. The agreement contained, *inter alia*, the following provisions:

The Corporation covenants and agrees as follows:

Section 1. That it will perform all obligations which, either expressly or by reasonable implication, are imposed on it by this Indenture, and will permit no default hereunder to occur.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Section 3. In the event the corporation's cash on hand shall exceed the sum of $7,500 at any time while this indenture is in force and effect the Corporation shall, \* \* \* set aside and apply two-thirds of the excess over and above $7,500.00, and may, in its sole discretion, set aside and apply any further part or all of such excess for whichever of the following purposes the Corporation shall deem preferable, to-wit:

(a) The purchase for the purpose of cancelling the same of any note or notes or of one or more installments of any note or notes issued hereunder, at the lowest price obtainable by tenders from the holders of same, provided such price is below the face value of principal and interest then accrued thereon.

(b) A payment on the principal of each note secured hereby plus the interest accrued to date of payment upon the part of said principal so paid, such principal payments to be made on each of said notes ratably in proportion to the unpaid principal of each of said notes.

Section 4. It will not declare and/or pay any dividends to its stockholders until all said notes are fully paid and discharged.

On June 30, 1937, the petitioner sold for $51,000 in cash its franchise for distribution of Seven-Up in this territory to an independent corporation in which petitioner had no interest. The franchise was originally acquired by petitioner without cost and the entire proceeds from its sale represented earnings and profits.

The unpaid balance of the notes secured by the above mentioned deed of trust at the time of the sale of the franchise amounted to $29,924.38. The petitioner immediately upon the sale of the franchise deposited in the National Bank of Commerce at Houston a part of the proceeds from the sale sufficient to satisfy the unpaid balance on the notes. On July 31, 1937, the notes were paid in full out of the funds so deposited with the bank.

The net income of the petitioner for 1937, before deducting excess profits taxes, was $50,409.67. The money applied to the payment of the notes secured by the trust deed was a part of such net income, earnings, and profits of petitioner for 1937.

Under the terms of the deed of trust, the holders of the notes had a right to require the application of $29,924.38 of the proceeds from the sale of the franchise to the payment of their notes. The deed of trust remained in full force and effect until such payment was made.

The Commissioner recognized the above mentioned deed of trust as one entitling the petitioner to a credit under section 26 (c) of the Revenue Act of 1936 in determining its tax liability for 1936.

The adjusted net income of petitioner for 1937 was $40,597.11. The balance sheet of petitioner as of January 1, 1937, discloses an operating deficit of $98,812.27 and its balance sheet as of December 31, 1937, discloses an operating deficit of $63,182.72.

The petitioner, in computing undistributed profits surtax in his return, claimed credit for $29,924.38 on account of contracts restricting dividend payments. The credit claimed was disallowed, the deficiency notice making reference to section 26 (c) (2) of the Revenue Act of 1936, the result being computation of a deficiency in income tax in the above stated amount of $6,428.62. In the petition and upon brief the petitioner contends for the allowance of the credit under both

subsection (c) (1) and subsection (c) (2) of section 26, Revenue Act of 1936.[1]

We first consider the application of subsection (c) (2) for the reason that we think it can be very briefly disposed of. In our opinion, though the contract was written and executed prior to May 1, 1936, section 26 (c) (2) does not apply for the simple reason that the contractual provision relied upon does not expressly deal with the disposition of earnings and profits of the taxable year, nor expressly require them to be paid or set aside within the taxable year in discharge of debt. The provision merely provides that, in the event the corporation's cash on hand shall exceed $7,500, two-thirds of the excess shall be applied upon the debt. It is obvious that "cash on hand" is not the equivalent of "earnings and profits of the taxable year", for cash on hand might have a source entirely unrelated to earnings or profits, e. g., capital contributed, and earnings and profits might not be cash on hand. The company might have far more earnings and profits than cash on hand, yet the contractual provision requires the application only of "cash on hand", to the designated extent, upon the debt. We hold that section 26 (c) (2) does not entitle the petitioner to the credit sought. *Helvering* v. *Maloney Electric Co.*, 120 Fed. (2d) 617.

Nor do we think that section 26 (c) (1) covers the situation placed before us or entitles petitioner to the credit desired. Though the contract, as above seen, was written, was executed prior to May 1, 1936, and expressly deals with the payment of dividends, nevertheless we think that no contractual provision prevented distribution of the amount involved as a dividend "within the taxable year." The contract nowhere provides that dividends shall not be distributed within the taxable year here involved or any other year, but merely provides

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \* \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

against such payment of dividends until the indebtedness involved is paid and discharged. This might have been done upon the first day of the year, leaving the corporation free to pay dividends the entire year, save the one day; or, as above seen, the debt might have been paid from a capital contribution or other source not constituting earnings or profits. It is clear that the intent of the statute is to allow the credit, where an express contract is violated by distribution of adjusted net income as dividends, in a manner corresponding to a credit where the dividend is actually paid. The contract here did not forbid distribution of income as dividends during the year, nor provide that the debt be paid from income. The petitioner could have distributed within the taxable year all of its adjusted net income, undiminished by the $29,924.38 paid on its debts, without violating any provision of any written contract, for the contract could have been satisfied with funds other than income, and thus not be violated by distribution of income. Thus it appears that it is not the contract, but the manner in which the petitioner transacted the matter of its discharge by the use of income, that prevents the distribution of dividends to the extent of the $29,924.38 here involved only because it was in fact paid from the petitioner's only income. In *Roquemore Gravel & Slag Co.*, 44 B. T. A. 641, we held that section 26 (c) (1) did not confer credit where a contract provided against payment of dividends after a loan was obtained, the loan was obtained on August 28 of the taxable year, and it was not shown that the net profits of $33,833.06 for the taxable year had not been earned prior to August 28. We conclude and hold that the Commissioner did not err in denying the credit claimed.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

ARNOLD, dissenting: It seems to me that the majority have decided the issue on the basis of matters purely speculative. I see no reason under the facts peculiar to this case to venture into the realm of speculation. This taxpayer derived a profit of $51,000 cash from the sale. By the terms of its contract a specified portion thereof was required to be paid to its creditors. The petitioner recognized that it was contractually bound to pay its creditors out of such moneys and forthwith complied with the terms of its contract.

Petitioner started the year with an operating deficit; it closed the year with net income less than the gain realized on the sale. It is beside the point to say that payment *might* have been made from other sources and the gain from the sale distributed as dividends. The parties have stipulated that the debts were paid from "net income, earnings and profits" of the taxable year. To the extent that this

cash was used to satisfy its debts, petitioner was deprived of earnings and profits otherwise available for distribution as dividends. To say that the debts could have been paid the first of the year or at any other time prior to sale of the franchise does not square with the facts. Petitioner would have had no taxable income for the year but for the sale.

The situation in *Roquemore Gravel & Slag Co.*, 44 B. T. A. 641, now on appeal to the Fifth Circuit, is different. There, the petitioner failed to show that it had no earnings prior to August 28, 1936, the effective date of the contract. The opinion states, p. 644:

> * * * Had it been shown that on August 28, 1936, petitioner had no earnings from which dividends could have been declared, it would be clear that any 1936 dividends would have to have been declared out of earnings of the petitioner acquired after the date of the loan. A distribution of these earnings was strictly forbidden by the contract here in evidence. * * *

It seems to me that this petitioner has shown that before July 31, 1936, it was contractually prohibited from distributing dividends, and that after July 31, 1936, it had only $6,172.73 of undistributed profits subject to surtax. The $29,924.38 used by petitioner on July 31, 1937, to discharge the indebtedness was not available for payment of dividends at any time during the taxable year. Prior to that date it could not be distributed as dividends because of contract restrictions; thereafter, it was not in petitioner's control for any purpose.

Petitioner's adjusted net income of $40,597.11 less the $29,924.38 leaves $10,672.73 which could be distributed. Petitioner distributed $4,500 of this amount, which respondent allowed as a dividends paid credit, leaving $6,172.73 as the only amount subject to tax. In my opinion the credit should be allowed.

LEECH, TURNER, and TYSON agree with this dissent.