A. E. STALEY MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99347.  Promulgated January 27, 1942.

*C. C. Le Forgee, Esq.*, for the petitioner.
*Frank F. Korell, Esq.*, for the respondent.

200

OPINION.

HARRON: The sole question is whether in the taxable year in the computation of the surtax imposed by section 14 of the Revenue Act of 1936 petitioner is entitled to a credit in the amount of $371,223.80 under section 26 (c) (2), the provisions of which are set forth in the margin.[1] On its income tax return for the taxable year in the

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

computation of the surtax imposed by section 14, petitioner took a credit for contracts restricting dividend payments in the amount of $371,223.80. The credit was disallowed by respondent on the ground that it was not a proper credit within section 26 (c).

In its brief petitioner claims that it is entitled to the credit in question under section 26 (c) (2) and bases its claim on the provisions of section 17 of the trust indenture. Section 26 (c) (2) grants a credit in the nature of a special tax exemption and is to be strictly construed. See *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46. Therefore, the provisions of section 17 of the trust indenture must be carefully scrutinized to determine whether the requirements of the statute are met. The first paragraph of section 17 provided in substance that on June 1, 1937, and on June 1 of each year thereafter for a specified period, petitioner was to make a sinking fund payment the amount of which was to be measured by whichever of the following two amounts was the greater: (1) 3 percent of the aggregate principal amount of its bonds, or (2) 25 percent of the net earnings of the preceding year. The second paragraph of section 17 gave petitioner the right to make any sinking fund payment either in whole or in part in cash or in its bonds issued and bought in by it. It could make the sinking fund payment all in cash, all in bonds, or part in cash and part in bonds. The third paragraph of section 17 allowed petitioner to anticipate a sinking fund payment in its bonds, only, but forbade it to anticipate a sinking fund payment in cash. In December of the taxable year petitioner estimated that net earnings for that year would amount to about $1,600,000, and that 25 percent thereof, or $400,000, would exceed 3 percent of its bonds, or $120,000, and petitioner made a sinking fund payment of $400,000 in cash on December 26, 1936. Net earnings for the taxable year actually amounted to $1,484,895.18 and 25 percent thereof amounted to $371,223.80, which is the amount of the credit in question. In June of 1937 the trustee made a repayment to petitioner of $28,776.20, the difference between $400,000 and $371,223.80.

In support of its contention that section 17 meets the requirements of the statute, petitioner relies especially on the Board's decision in *Strong Manufacturing Co.*, 41 B. T. A. 1273, which, subsequent to the filing of briefs in this case, has been affirmed by the Circuit Court of Appeals for the Sixth Circuit in *Commissioner* v. *Strong Manufacturing Co.*, 124 Fed. (2d) 360. See also, *Commissioner* v. *Warren Tool Corporation*, 124 Fed. (2d) 397; *Commissioner* v. *Ohio Leather Co.*, 124 Fed. (2d) 397; and *Commissioner* v. *Michigan Silica Co.*, 124 Fed. (2d) 397, all of which were decided by the Circuit Court of Appeals for the Sixth Circuit on December 9, 1941, on the authority of its opinion in the *Strong Manufacturing Co.* case. The contractual provision on which the allowance of the credit was

based in that case was in some respects similar to the first paragraph of section 17; the taxpayer was required to make a sinking fund payment of a fixed percentage of the net earnings of each year for a specified period of years, but was not required by the terms of the contractual provision to make such payment until 3½ months after the end of the respective year. The contractual provision in that case did not contain, *inter alia*, paragraphs similar to the second and third paragraphs of section 17, here, which allow the making of sinking fund payments in bonds and prohibit the making of an anticipatory sinking fund payment in cash.

The opinion of the Sixth Circuit in the *Strong Manufacturing Co.* case is apparently in conflict with the opinion of the Fourth Circuit in *Antietam Hotel Corporation* v. *Commissioner*, 123 Fed. (2d) 274, and with the opinion of the Eighth Circuit in *Helvering* v. *Moloney Electrical Co.*, 120 Fed. (2d) 617, on the question as to whether under section 26 (c) (2) the contractual provision must *in terms* require that a part of the earnings and profits of the taxable year be irrevocably set aside or paid within the taxable year. The Fourth Circuit, in the *Antietam Hotel Corporation* case, and the Eighth Circuit, in the *Moloney Electrical Co.* case, held that the contractual provision must *in terms* so require, while the Sixth Circuit, in the *Strong Manufacturing Co.* case, came to the contrary conclusion. If the conclusion reached by the Fourth and Eighth Circuits is correct, then the credit is not allowable in this case because section 17 did not *in terms* require that 25 percent of the earnings of the taxable year be paid or irrevocably set aside within the taxable year.

Even if the conclusion reached by the Sixth Circuit in the *Strong Manufacturing Co.* case were correct, the credit would not be allowable in this case for several reasons. In the first place, section 17 contained a paragraph not contained in the contractual provision in the *Strong Manufacturing Co.* case, to the effect that petitioner had the right to make any sinking fund payment in whole or in part in its bonds issued and bought in by it. Because of the presence of a very similar paragraph, a credit under section 26 (c) (2) was disallowed in *Fox River Paper Co.*, 44 B. T. A. 986 (on appeal to the Seventh Circuit). In that case, under a trust mortgage securing its bonds, the taxpayer on March 1 of each year during a specified period was to make a sinking fund payment equal to 25 percent of its net earnings for the preceding fiscal year ending on December 21. In December of 1936 the taxpayer estimated that its net earnings for that year would be about $100,000 and made a sinking fund payment of $25,000. Under the trust mortgage petitioner had the right to make any sinking fund payment in its bonds issued and bought in

by it. The Board held that, since it had this right, it was not required under the trust mortgage to pay or irrevocably set aside, either during or as of the taxable year 1936, any portion of its 1936 net earnings and profits. It is true that in the *Fox River Paper Co.* case the taxpayer had in its treasury in December of 1936 bonds issued and bought in by it having a principal amount far in excess of $25,000, and far in excess of 25 percent of its net earnings for 1936, while in this case the record indicates that petitioner had in its treasury in December of 1936 bonds issued and bought in by it having a principal amount of $75,000, or less than $371,223.80, the amount of the credit in question. However, petitioner could have converted other assets into a sufficient amount of bonds to make the sinking fund payment of $371,223.80 and thus could have paid out all of its current earnings free of the restrictions of section 17. In the second place, section 17 contained a paragraph which forbade an anticipatory sinking fund payment in cash. Such a paragraph was not contained in the contractual provisions involved either in the *Fox River Paper Co.* case or the *Strong Manufacturing Co.* case. Despite petitioner's contention to the contrary, the payment made by it in December of 1936 clearly was an anticipatory sinking fund payment in cash. The payment was not called for under section 17 until June 1 of the following year. The trustee labeled the payment as one "in anticipation" both in the letter which it sent acknowledging receipt of the payment and in the entries which it made on its books recording the receipt of the payment. Obviously, the payment of $371,223.80 in cash in December of 1936 not only was not required, but was expressly forbidden, by section 17 to be made in the taxable year. Respondent's determination is sustained.

*Decision will be entered for the respondent.*