Pittsburgh Forgings Company v. Commissioner.
Pittsburgh Forgings Co. v. Commissioner
Docket No. 111147.
United States Tax Court
1943 Tax Ct. Memo LEXIS 33; 2 T.C.M. (CCH) 1080; T.C.M. (RIA) 43506; December 11, 1943
*33 A mortgage indenture dated October 1, 1932 provided that petitioner should declare or pay no dividends on its capital stock unless, at the time of declaration, its bonds should have been redeemed or otherwise cancelled in definite amounts set forth therein; and also that the dividends declared by petitioner should not exceed the amount of such bonds redeemed and retired during the year. Its net income for 1937 was about $500,000. Under a commitment to a bank it curtailed a loan and redeemed or retired none of its bonds. Held, that petitioner was actuated by sound business motives and is entitled to credit provided by section 26 (c) (1), Revenue Act of 1936. H. A. Mihills, C.P.A., 917 Munsey Bldg., Washington, D.C., and R. K. Conaway, C.P.A., 2912 Grant Bldg., Pittsburgh, Pa., for the petitioner. W. J. McFarland, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $97,091.44 in the petitioner's income tax for the year 1937. The issues are: 1. The correct amount of the petitioner's liability for income tax due and allocable to the Commonwealth of Pennsylvania. The decision in the second issue will determine *34 such amount. 2. The allowance of the credit provided by section 26 (c) (1) of the Revenue Act of 1936 in the computation of the petitioner's surtax on undistributed profits. Findings of Fact Certain facts were stipulated and as so stipulated are adopted as findings of fact. The pertinent portions of such facts are as follows: The petitioner is a corporation organized and existing under the laws of the State of Delaware, with its principal office and place of business located at Coraopolis, Pennsylvania. The petitioner filed its income and excess-profits tax return for the year 1937 with the collector of internal revenue for the Twenty-third District of Pennsylvania. It kept its books and made its income tax return for that year on the accrual basis. On March 22, 1933 the petitioner entered into an indenture of mortgage dated October 1, 1932, with The Union Trust Company of Pittsburgh as trustee, for the authorized issue of First Mortgage 6% Gold Bonds of $1,000 denominations, in the principal amount of $446,000, but actually issued in the amount of $445,000. Four hundred twenty-one thousand dollars in principal amount of such First Mortgage 6% Gold Bonds, dated October 1, 1932, *35 were issued during the year 1933 in exchange for bonds of the same principal amount of a previous issue due April 1, 1938 and $24,000 in principal amount of the First Mortgage 6% Gold Bonds were issued during the year 1933 in payment of the balance owing on a land contract. The terms of this indenture were not altered prior to or during the year 1937. Section 2, Article Second, and Section 1, Article Third, of the indenture are as follows: Section 2. No dividend shall be declared or paid upon any capital stock of the Company of any class now or hereafter created, unless at the time of the declaration of such dividend the Company shall have redeemed or otherwise retired and cancelled First Mortgage Bonds aggregating at least $42,000 in principal amount, plus additional First Mortgage Bonds aggregating at least $21,000 in principal amount for each whole period of six months which shall have elapsed between October 1, 1932, and the date of the declaration of such dividend; and the total amount of dividends declared and paid in any calendar year by the Company, upon any and all classes of stock of the Company, whether heretofore or hereafter created, shall in no case be greater than *36 the aggregate principal amount of such First Mortgage Bonds as have been redeemed or otherwise retired and cancelled by the Company, theretofore during such calendar year. * * * * * Section 1. The Company shall and will, on or prior to the first day of April, in each year during the five-year period commencing with the year 1938 and ending with the year 1942, redeem and retire, or otherwise cause to be retired and cancelled, First Mortgage Bonds of a principal amount aggregating at least ten per cent of the aggregate principal amount of the First Mortgage Bonds which shall have remained outstanding and unpaid on March 31, 1938. The Company may secure the amount of First Mortgage Bonds requisite to enable it to comply with this covenant and may comply with this covenant, either by purchasing such bonds upon the open market and delivering them to the Trustee for cancellation, or by the payment of the redemption prices and by compliance with the conditions hereinafter, in Section 2 of this Article Third, provided and set forth. On December 31, 1931 the petitioner held 5,267 shares of its capital stock in its treasury. These shares had been acquired prior to that date at cost of *37 $42,879.74. During the period from December 31, 1931 to December 31, 1937 the petitioner acquired 466 shares of its capital stock at the dates set forth below: June 30, 1933
232 shares
December 31, 1934
25 shares
May 31, 1935
209 shares
On June 30, 1933 R. A. Mitchell and W. H. Stocking assigned to the petitioner 205 shares and 27 shares, respectively, of its capital stock from shares issued to then as a bonus on that date. The petitioner allowed credits of $614 and $82, respectively, to R. A. Mitchell and W. H. Stocking for these shares in payment of the balances of their personal accounts with the petitioner. The 25 shares, acquired on December 31, 1934, were acquired through the forfeiture of a subscription to purchase the stock from the petitioner by R. J. Koepp. The unpaid balance of the subscription at the date of forefeiture was $113.13, and this amount was entered on the petitioner's books as the cost of the 25 shares. The 209 shares, acquired May 31, 1935, were previously held as collateral security by the petitioner on a note receivable of the Railway Products Company upon which a balance of $740.91 was owing at that date. On May 31, 1935 the petitioner took *38 over the collateral for $627 and charged off the balance owing on the note of $113.91 as a bad debt. During the period from January 1, 1932 to December 31, 1937 the petitioner disposed of 5,733 shares of treasury stock (the 5,267 shares owned December 31, 1931 and the 466 shares acquired on the dates heretofore set forth). These shares were disposed of on the dates, in the manner, and for the amounts shown below: Sale price or
value assigned with
Number
respect to shares
Date
Manner of Disposition
of shares
issued as bonus
June 30, 1932
Issued as bonus
82
$ 246.00
June 30, 1933
Issued as bonus
701
2,103.00
Dec. 21, 1935
Issued as bonus
500
3,500.00
Dec. 14, 1935
Sold for cash
200
1,534.70
Jan. 28, 1936
Sold for cash
1,000
7,894.33
March 1936
Sold for cash
600
8,155.74
August 1936
Sold for cash
1,000
10,844.33
Dec. 21, 1936
Issued as bonus
330
4,950.00
Jan. 12, 1937
Sold for cash
500
9,609.60
Apr. 6, 1937
Sold for cash
320
8,021.31
Dec. 18, 1937
Issued as bonus
500
4,125.00
The stock of the petitioner issued as a bonus as set forth in the foregoing schedule was issued to the following officers of the petitioner: R. A. Mitchell, Vice President
943 shares
W. H. Stocking, Asst. to President
424 shares
W. H. McGary, Treasurer
621 shares
J. C. Bane, Jr., Secretary
125 shares
*39 On September 24, 1929 and July 10, 1935 the petitioner's capital stock was listed for trading on the Pittsburgh Stock Exchange and the New York Curb Exchange, respectively. During the year 1937 the petitioner's capital stock was traded in on both The Pittsburgh Stock Exchange and the New York Curb Exchange. On July 1, 1935 the capital stock of the petitioner was registered pursuant to sections 12 (b) and (c) of the Securities and Exchange Act of 1934. The provisions of the United States Code, Title 15, § 77a to 77aa, generally known as the Securities Act of 1933, were applicable to the sale or issuance of any securities of the petitioner during the period from May 27, 1933 to December 31, 1937. During the period from August 31, 1934 to July 31, 1939 the petitioner acquired $108,000 in principal amount of its First Mortgage 6% Gold Bonds issued under its mortgage indenture dated October 1, 1932. The date of purchase, the purchase price, and the principal amount of the bonds purchased during the period from August 31, 1934 to July 31, 1939 are set forth in the following schedule: Date of
Purchase
Principal
Purchase
Price
Amount
Aug. 31, 1934
$12,000.00
$17,000.00
May 25, 1935
27,280.00
31,000.00
June 1935
20,430.00
24,000.00
Aug. 17, 1935
902.50
1,000.00
Sept. 18, 1935
930.00
1,000.00
Oct. 3, 1935
922.50
1,000.00
Nov. 22, 1935
5,775.00
6,000.00
Dec. 4, 1935
4,812.50
5,000.00
Dec. 10, 1935 (acquired in
settlement of petition-
er's account with closed
Bank of Pittsburgh,
N.A.)
1,119.02
1,000.00
Apr. 13, 1936
6,000.00
6,000.00
July 31, 1939
15,037.50
15,000.00
*40 The purchases were duly authorized by the petitioner's board of directors. The transactions relating to the petitioner's capital stock and First Mortgage Bonds were duly reflected in appropriate entries in its books. The petitioner delivered its First Mortgage 6% Gold Bonds, acquired by it as heretofore set forth, to The Union Trust Company of Pittsburgh, trustee under the indenture, on the dates and in the principal amounts shown below: Date
Principal amount
April 1, 1938
$45,000
Jan. 3, 1939
45,000
Aug. 23, 1939
18,000
On September 1, 1939 the petitioner delivered to such trustee its check for $350,480 for the redemption of the then outstanding bonds. This check represented the following: Principal amount of bonds outstanding
$337,000
Premium - 1%
3,370
Interest coupons due October 1, 1939
10,110 Corresponding entries were made in the petitioner's books. The Greenville Steel Car Company, hereinafter called Greenville, was incorporated under the laws of the Commonwealth of Pennsylvania on January 2, 1925. On January 21, 1930 the outstanding preferred capital stock of the company was owned as follows: No. of shares
Preferred
F. L. Fay
2,836
James P. Schrider
775
Howard Aumend
375
Others
3,014
Total
7,000
*41 Greenville retired 611 shares of its First Preferred stock in December 1930 and 463 shares in January 1931. Certain restrictions upon the distribution of dividends on the common stock were imposed in a meeting of stockholders held on January 10, 1925, were referred to in the preferred stock certificates and were made conditions thereof. On January 21, 1930 the petitioner acquired all of the outstanding common stock of Greenville, consisting of 8,000 no par value shares, in exchange for 20,000 shares of the petitioner's stock which at that time had no par value. None of the preferred stock of Greenville was acquired on January 21, 1930 and the petitioner owned none of the preferred stock of Greenville at that time. The 8,000 shares of common stock of Greenville were recorded on the books of the petitioner at a value of $250,000, of which $100,000 represented the stated value of the 20,000 shares of the petitioner's no par value stock issued therefor and $150,000 was credited to the petitioner's capital surplus account. During the period from January 1, 1930 to December 31, 1936 Greenville paid no dividends on its common stock. It received net income or sustained loss and paid dividends *42 on its preferred capital stock in the respective years in the amounts shown in the following schedule: Amount of
dividends paid
on preferred
Year
Net Income
Net Loss
capital stock
1930
$ 90,569.24
$ 37,485.42
1931
$75,214.07
21,100.59
1932
96,718.55
None
1933
4,781.14
None
1934
164,329.95
20,741.00
1935
69,919.54
15,555.75
1936
186,879.97
191,854.25
During the period from January 1, 1930 to December 31, 1936 the petitioner received net income or sustained loss and paid dividends on its capital stock in the respective years in the amounts shown in the following schedule: Dividends
paid on
Year
Income
Loss
capital stock
1930
$293,043.19
$260,362.40
1931
$184,457.92
108,635.50
1932
159,694.48
None
1933
73,781.46
None
1934
31,039.74
None
1935
57,864.19
None
1936
65,498.53
None
The restrictions imposed on January 10, 1925 were amended so that the exclusive voting power was vested in the preferred stockholders during default under certain stated conditions. In order to remove these restrictions the petitioner determined to acquire the preferred stock of Greenville. *43 At a meeting of the petitioner's directors held July 20, 1937, authorization was given to the appropriate officers of the petitioner to acquire at least a majority of the outstanding preferred stock of Greenville. On August 2, 1937 the petitioner entered into an agreement with the Manufacturers National Bank of Detroit, hereinafter called the Bank, for the purpose of borrowing $592,600. The provisions of the loan agreement were carried out as therein recited, and the proceeds of the loan were used by the petitioner for the purposes therein stated. The agreement provided that the petitioner would purchase all procurable shares of Greenville preferred stock for a maximum price of $100 per share plus accrued dividends. The Bank agreed to lend the petitioner $592,600, to be covered by the petitioner's interest-bearing notes, payable $200,000 in 90 days, $50,000 in six months, $50,000 in one year, $50,000 in one and a half years and $242,600 in two years. The Greenville stock, preferred and common, owned by the petitioner, was pledged as collateral security, together with other securities of Greenville which might become the property of the petitioner, and the right to receive dividends *44 from Greenville stock (provided that until the petitioner should default and should have failed to cure the default within ten days, the dividends should be paid to the petitioner for its own use) was also hypothecated as additional security. Pursuant to the loan agreement the petitioner purchased on August 2, 1937 all of the outstanding preferred stock of Greenville, consisting of 5,926 shares of a par value of $100 each, for the sum of $592,600. After the petitioner acquired all of the preferred stock of Greenville the rights of the preferred stockholders were modified by resolution adopted at a meeting of the stockholders of Greenville held August 21, 1937. The resolution provided, among other things, that the preferred stock should have no voting power. The petitioner paid to the Bank $100,000 on October 15, 1937, $100,000 on October 21, 1937 and $50,000 on November 23, 1937 as repayments on its loan secured August 2, 1937. The petitioner's adjusted net income for the year 1937 was $499,981.20. On December 31, 1936 its earned surplus was $3,286.48, and on December 31, 1937 it was $445,093.10. On July 31, 1937 the petitioner's net current assets were $299,396.40 and on October *45 31, 1937 they were $284,277.96. Greenville paid dividends during 1937 as follows: Preferred
Common
Date
Stock
Stock
January 16, 1937
$10,370.50
March 19, 1937
10,370.50
June 25, 1937
10,370.50
September 20, 1937
10,370.50
October 15, 1937
$200,000
November 22, 1937
10,370.50
50,000
December 29, 1937
32,000
$51,852.50
$282,000
Total dividends paid
$333,852.50
Of the total dividends paid by Greenville during the year 1937, dividends aggregating $302,741 were paid to the petitioner. The petitioner paid accrued dividends of $3,507.86 on the preferred stock at the time the preferred stock was purchased on August 2, 1937. The petitioner did not pay any dividends on its capital stock during the period from April 26, 1931 to December 26, 1939. The record discloses the following additional facts: The petitioner manufactures drop and upset steel forgings. The largest portion of its production is sold to the automotive trade and a considerable portion to the railroad industry. The business of both industries is seasonal. The recurrent demands of such seasonal business were met by securing current or short-term loans. The petitioner's own bonds, purchased *46 by it prior to 1937, were retained in its treasury because none were due at the time of purchase. The petitioner did not offer such bonds for sale. The petitioner did not acquire and retire its bonds during the taxable years as contemplated in the bond indenture because it considered that it did not have sufficient funds to do so. Supported by its bankers, the petitioner regarded it more necessary to preserve its working capital than to retire its bonds. No feasible method of accomplishing the retirement of the bonds was developed. Greenville was engaged in the business of building and repairing freight cars. The Greenville stock was acquired by the petitioner in order to diversify and augment its own business. The petitioner was not in competition with Greenville. Greenville's business was fluctuating. It maintained no substantial inventory on hand except for specific orders. The dividend of $250,000 on the Greenville common stock was not used by the petitioner to retire its bonds because the petitioner had agreed with the Bank to apply it to the partial liquidation of the Bank loans. In 1939 the petitioner refinanced its loan with the Bank by a new loan of $500,000, and from *47 its proceeds paid off and retired its remaining outstanding bonds. Opinion VAN FOSSAN, Judge: The primary issue before us is whether or not the declaration of dividends by the petitioner in 1937 would have violated the provisions of Section 2, Article Second, of the mortgage indenture dated October 1, 1932, as contemplated by section 26 (c) (1) of the Revenue Act of 1936. [1]
*48 It cannot be gainsaid that this section, a part of the petitioner's written contract with the mortgagee, dealt expressly with the payments of dividends and that it was executed prior to May 1, 1936. Dr. Pepper Bottling Co. of Memphis, 45 B.T.A. 540; Kaufmann Department Stores Securities Corporation, 2 T.C. 656. The vital question is whether, under the present facts, the contract prohibits the declaration of dividends within the taxable year. The petitioner cites and relies on Maumee Malleable Castings Co., 44 B.T.A. 263, and Page Oil Co., 41 B.T.A. 952. We believe these cases are substantial and adequate authority to require a decision in petitioner's favor. In the Maumee case a parallel situation existed. Under the provisions of a mortgage petitioner in that case was prohibited from making any distribution of earnings or surplus until a bond had been fully paid. Petitioner did not pay off the bond in full. We held that its failure to pay the bond in full was actuated by sound business purposes and allowed the credit. See also E. C. Atkins & Co., 44 B.T.A. 441, *49 affirmed 127 F.2d 783. We make the same holding here. Petitioner's action in paying the bank loan was actuated by sound business purposes, as was its action in conserving its working capital. The credit is allowed. The parties have agreed that the disposition of the primary issue determines the amount of the petitioner's liability for income tax due and allocable to the Commonwealth of Pennsylvania. The correct amount will be ascertained and taken into consideration upon the recomputation of the petitioner's tax hereunder. Decision will be entered under Rule 50.
Footnotes
1. SEC. 26. CREDITS OF CORPORATIONS. In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax - * * *
(c) Contracts Restricting Payment of Dividends. - (1) Prohibition on payment of dividends. - An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.↩