## VICKERS PETROLEUM CO., Inc., v. UNITED STATES.

### No. 46013.

Court of Claims.

March 4, 1946.

Phil D. Morelock, of Washington, D. C. (Morelock & Seay, of Washington, D. C., on the brief), for plaintiff.

H. S. Fessenden, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Fred K. Dyar, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

The principal question is whether plaintiff owed any amount as surtax on undistrib-

uted profits for 1936. Plaintiff says no such tax was due, inasmuch as the adjusted net income of $79,830.87, for the purpose of the surtax on undistributed profits for 1936, was less than the allowable credit of $82,400 made up of $60,000 for dividends paid from earnings for 1936 plus $22,400 set up on the books on December 31, 1936, under the terms of the contract with the trustee for bondholders restricting the payment of dividends. The decision of the question turns on the interpretation of the agreement of September 3, 1935, as extended to December 31, 1937 (findings 3 and 5), between The Vickers Petroleum Company, Inc., of Delaware, herein referred to as "plaintiff," and the trustee for its bondholders. The plaintiff, The Vickers Petroleum Company, Inc., by a reorganization on December 22, 1941, took over all assets and liabilities of the Delaware Company.

As set forth in finding 9, defendant disallowed the claimed deduction of the bond retirement fund reserve of $22,400 from the corrected adjusted net income for 1936 and thereby determined and collected a surtax of $2,179.55 on undistributed profits of $19,868 remaining after allowing a credit of $60,000 for dividends paid from earnings for 1936. Plaintiff computes its claimed overpayment of $2,186.11 as follows:

|  | Tax Paid | Correct Tax | Refund due |
|---|---|---|---|
| Income Tax | $12,092.15 | $12,085.59 | $ 6.56 |
| Undistributed Profits Tax | 2,179.55 | None | 2,179.55 |
| Total | 14,271.70 | 12,085.59 | 2,186.11 |

As shown by the findings and the agreement of September 3, 1935, quoted in finding 3, plaintiff had outstanding and unpaid on September 3, 1935, $54,800 of first mortgage 6½ percent Serial Gold Bonds issued in the aggregate amount of $500,000 on August 1, 1930, the final payment on such bonds of $140,000 having become due September 1, 1935. The agreement of September 3 extended the time for payment of the unredeemed bonds to December 31, 1936, and by a further agreement on December 23, 1936, the agreement of September 3 was extended without change to December 31, 1937. Plaintiff redeemed $18,500 of the bonds between September 3 and December 31, 1935, and $13,900 during 1936, leaving $22,400, principal amount of such bonds, outstanding and unpaid at December 31, 1936.

The pertinent part of the agreement of September 3, 1935, as extended to December 31, 1937, provided as follows:

"It is the further understanding between the parties hereto that there shall be created and set aside by the Company, out of its net earnings, an amount equal to the par value of the bonds outstanding at this date, it being the purpose of this provision that a sufficient reserve be created, either in cash or by appropriation of the earnings of the Company, so as to provide for retirement of the said outstanding bonds prior to the expiration of the extension hereby granted. Party of the Second Part shall have the right however to pay all of the unpaid outstanding bonds at any time prior to December 31st, 1936, provided its earnings enable it to do so at an earlier date."

■ The above-quoted agreement of September 3, 1935, was a contract with a creditor, i. e., the trustee for the bondholders, within the meaning of sec. 26(c) (1) and (2) of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 836, and the rule announced in Hercules Gasoline Company, Inc., v. Commissioner of Internal Revenue, 326 U.S. ——, 66 S.Ct. 222, 223. In the Hercules case certain outstanding preferred stock was entitled to cumulative dividends of 8 percent per annum, and there was a charter provision made a part of the preferred shares to the effect that "there shall be no dividend on the common stock until all of the preferred stock has been retired, redeemed and discharged." In denying the taxpayer the right to a claimed credit under sec. 26(c) (1), supra, for undistributed profits tax purposes and by reason of this provision in the charter, and preferred stock, the Supreme Court in the Hercules case, applied the rule stated in Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29, "That this section referred to routine contracts dealing with ordinary debts * * *." and said:

" * * * Congress having thus made the relief obtainable under (c) (1) and (c) (2) mutually exclusive has indicated that it considered the two subdivisions as interdependent. Congress therefore intended to cover the same type of contract, namely a contract with creditors, in both subsections and not to extend subdivision (c) (1) to intra-corporate contracts while subdivision (c) (2) was to cover contracts with creditors only. * * *."

This case does not involve an intra-corporate contract but is governed by a contract with a creditor.

Plaintiff contends that the credit of $22,400 here claimed meets all the requirements of sec. 26(c) (2), in that (a) the agreement was executed prior to May 1, 1936; (b) it expressly deals with the disposition of earnings and profits for 1936 in that the extension of time thereunder for payment of the indebtedness was from September 1, 1935, to December 31, 1936, during which period plaintiff had the right to pay all of the unpaid outstanding bonds prior to the limitation period, providing its earnings enabled it to do so, but, in any event, if it had not done so, it was mandatory that there should be "created and set aside, out of its (plaintiff's) net earnings," an amount sufficient to pay the indebtedness which amount necessarily, under the circumstances, had to be out of the earnings and profits of the year 1936; (c) the statutory credit relates to that portion of the earnings or profits which are required to be paid or irrevocably set aside for the reason that the agreement of September 3, 1935, specifically required that in the event of failure of payment a reserve should be set aside out of "net earnings," the amount of which could not have been known, by the very nature of things, until the close of 1936 when earnings and profits for the year were determined and when it was known what portion of the bonded indebtedness would actually be paid under the election provided for, at which time the Board of Directors, in December 1936, determined that the corporation would not pay to the extent of $22,400, and provided for the irrevocable setting aside of the amount so unpaid. Therefore, plaintiff contends, the credit is allowable to the extent claimed because, as the stipulated facts show, plaintiff irrevocably set aside on its books of account the sum of $22,400 in a bond retirement fund reserve in accordance with the written agreement of September 3, 1935, and the action of its Board of Directors on December 21, 1936.

Section 26(c) (2), supra, provides for a credit of "an amount equal to the portion of the earnings and profits of the *taxable year* which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision *expressly deals* with the disposition of earnings and profits of the *taxable year)* to be paid *within the taxable year* in discharge of a debt, or to be irrevocably set aside *within the taxable year* for the discharge of a debt; to the extent that such amount has been so paid or set aside." (Italics supplied.)

Defendant says that while it is true the contract in requiring a bond retirement reserve expressly dealt with "net earnings" it contained no provision expressly dealing with earnings and profits for the taxable year 1936, nor did it require that a portion of the earnings and profits for 1936 be paid in discharge of the bonds or be irrevocably set aside in 1936 out of profits for that year for the discharge of the debt; that the contract did not specifically designate what years earnings were to be appropriated for payment or be irrevocably set aside and reserved, and that the only logical conclusion to be drawn from the whole tenor of the agreement is that the reserve was to be created out of the net earnings of plaintiff at the time of the agreement, September 3, 1935, or as soon thereafter as the earnings were sufficient to do so.

We agree with defendant. To the extent of $22,400 the bonds were not paid during 1936 and we are therefore concerned only with the reserve. The whole purpose of the reserve provision of the agreement was to require and secure, by reason of the extension of time for payment, a reserve equal to the par value ($54,800) of the bonds outstanding and past due on September 3, 1935. It therefore expressly dealt with earnings for 1935, or whatever net earnings plaintiff then had, and we find no provision which expressly or by necessary implication deals with earnings and profits for 1936 or gives plaintiff the option of waiting until December 31, 1936, to set up its reserve. The crucial words of the agreement were "that there shall be created and set aside by the company, out of its net earnings, an amount equal to the par value of the bonds outstanding at this date." The date referred to was September 3, 1935. Plaintiff had sufficient "net earnings" to create and set aside such reserve in 1935 and we think the language of the agreement shows that this was what was intended. Plaintiff had an actual income of $124,505.54 for 1935 which it credited to surplus on its books, and it paid cash dividends at December 31, of that year, of $30,000 which was more than the $22,400 par value of bonds outstanding on December 31, 1935.

472

Our conclusion that the above-quoted provision required plaintiff to create and set aside the reserve out of net earnings (earned surplus or profits for 1935) is not only supported by the quoted language but by the provision immediately following such requirement to the effect that "it being the purpose of this provision that a sufficient reserve be created ["at this date" as before stated] either in cash or by appropriation of the earnings of the company, so as to provide for retirement of said outstanding bonds prior to the expiration of the extension hereby granted." This provision shows that the trustee desired immediate and continued protection against dissipation of net earnings between September 3, 1935 and December 31, 1936, through the creation at the date of the agreement of a reserve "in cash or by appropriation of earnings," and that the trustee did not intend to allow plaintiff to wait until December 31, 1936 to create and set aside a reserve in the event the bonds were not all redeemed by that date. Such an arrangement would not have afforded the desired protection. Since the agreement did not expressly provide for the reserve out of 1936 earnings and cannot be interpreted as having clearly so intended, we cannot hold that the agreement "expressly deals with the disposition of earnings of the taxable year" 1936, by requiring that they "be irrevocably set aside within the taxable year [1936] for the discharge of a debt."

In addition to what has been said it should be noted that the facts do not show that the reserve of $22,400 set up at December 31, 1936 was created solely out of earnings and profits for 1936. The contract of September 3, 1935 and the resolution of plaintiff's Board of Directors on December 21, 1936, do not so require and the facts show only that the reserve created by plaintiff was "set up out of its surplus account."

Plaintiff has not sustained the burden of proof necessary to entitle it to recover under the provisions of the agreement and sec. 26(c) (2) of the Revenue Act of 1936. Helvering v. Ohio Leather Co., 317 U.S. 102, 106, 107, 63 S.Ct. 103, 87 L.Ed. 113; Hobbs-Western Co. v. Commissioner of Internal Revenue, 8 Cir., 133 F.2d 165, 167; Valentine-Clark Corp. v. Commissioner of Internal Revenue, 8 Cir., 137 F.2d 481, 484; Helvering v. N. O. Nelson Co., 8 Cir., 133 F.2d 846.

Plaintiff is not entitled to recover and the petition must, therefore, be dismissed. It is so ordered.

WHALEY, Chief Justice, and JONES and WHITAKER, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.