Mathias H. Baker,

*vs.*

Bankers Mortgage Company, a corporation of the State of Delaware, Alfred Sohland and Dora Sohland, and The Harrisburg Corporation, a corporation of the State of Delaware, and Samuel Fishman.

*New Castle, July 28, 1926.*

Caleb S. Layton and James R. Morford, of the firm of Marvel, Layton, Hughes & Morford, for complainant.

Aaron Finger, for defendant, Alfred Sohland.

The Chancellor. The solicitor for the defendant Alfred Sohland, reserving, of course, an objection to any decree other than for the defendants, contends that if a decree is entered for the complainant, the one submitted and numbered one is open to the objection that it orders canceled *inter alia* certificate No. 236 for 500 shares of

preferred stock and certificate No. 230 for 1,000 shares of common stock, both standing in the name of Alfred Sohland. The total number of shares which the proposed decree cancels is 5,000 shares of preferred stock standing in the name of Dora Sohland, about which there is no present controversy, and 1,610 shares of preferred stock and 5,085 shares of common stock standing in the name of Alfred Sohland. The two blocks of stock (certificates No. 236 and No. 230) above mentioned are included in this number. The total number of shares, in either the name of Alfred or Dora Sohland, which the complainant is entitled to have canceled is, under the evidence, 6,885 shares of preferred and 4,860 shares of common. Thus all the preferred stock standing in both names falls short by 275 shares of the number fraudulently issued and now proper to be canceled if still available and the common stock standing in Alfred Sohland's name exceeds the number fraudulently issued and now proposed to be canceled by 225 shares. If certificate No. 236 for 500 shares of preferred stock be not canceled the shortage of the preferred below the fraudulent issue will be 775 shares instead of 275; and if certificate No. 230 for 1,000 shares of common stock be not canceled, there will not remain in Sohland's name enough common stock by 775 shares to supply the requisite amount of 4,860 shares found to have been fraudulently issued and therefore subject to cancellation.

The ground upon which the solicitor for Alfred Sohland rests his objection to the cancellation of the stock represented by certificates No. 236 and No. 230 is that the shares so evidenced are not a part of the shares referred to in the prior opinion as having been fraudulently obtained, but were acquired by Sohland by the payment of a lawful consideration in cash; and that it is not permissible to lay hold of these lawful shares for cancellation in place of a like number of fraud-tainted shares which have gotten out of reach by transfers.

In dealing with this contention, it is first to be observed that the record fails to show that preferred certificate No. 236 and common certificate No. 230 evidence shares which were purchased by Sohland upon a lawful consideration and are therefore untainted by the fraud complained of. The stock ledger account with Sohland is in evidence. Certificates Nos. 32 and 33 each evidencing 4,500

shares of common stock were issued to Sohland and were all fraudulently issued. (Of these 9,000 shares 4,140 were subsequently returned leaving the balance above mentioned of 4,860 shares of tainted common.) Sohland acquired other shares after the original 9,000, his holdings running up as high as 12,360 shares of common. But he turned in certificates No. 32 and No. 33 calling for 9,000 shares. Whether these were turned in to be broken into smaller amounts and reissued to him, or whether he sold and transferred them to others, does not appear from the evidence before me. His stock ledger account shows fifteen transactions, eleven of which took place on August 9, 1923. On that date he acquired, amongst others, certificate No. 230 for 1,000 shares of common. Where that 1,000 shares came from does not appear. For all that appears they may have been a part of the 9,000 shares evidenced by certificates No. 32 and 33, which were acquired by him as a part of the fraudulent transaction.

Without going into details, a similar situation exists in the evidence with respect to the 500 preferred shares evidenced by certificate No. 236.

So that, I repeat, the record fails to show that the shares evidenced by the two certificates in question were in point of fact acquired by Sohland in a lawful manner, as is now argued. It is urged, however, that if this be the state of the record, the shares evidenced by the two certificates should not be canceled because, for the cancellation to be justified, it must be presumed in the complainant's favor that the shares are among the illegitimate ones, a presumption which is not allowable as obviating the complainant's necessity of supporting by the burden of proof that taint of fraud with which he seeks to vitiate the shares in question. This contention raises the question of whether the complainant must take the laboring oar in showing that given shares in the name of. one who now has a large and has had a larger total to his credit, are as a matter of fact smeared with a fraud which is spread over. some of them. No authority has been cited, nor have I found any directly bearing on this question. The reasoning which prevails in the case of a trustee who commingles trust funds with his own so that the identity of the latter is indistinguishable from the former, supplies an analogy which appeals to me as giving a reason-

able answer to this question. In the case of the trustee who thus jumbles trust funds with his own, equity puts the burden upon the trustee of distinguishing what is his. *Cox v. Wills*, 49 *N. J. Eq.* 573, 25 *A.* 938; *Central Nat. Bank of Baltimore v. Conn. Mut. Life Ins. Co.*, 105 *U. S.* 54, 26 *L. Ed.* 693; 1 *Perry on Trusts*, (*6th Ed.*) § 447; 39 *Cyc.* 539. The evidence in this case is such that the good and bad shares are mixed up in the same bag, so to speak. If the record owner of them desires to contend that certain particular shares are in fact good and not vitiated ones, by analogy to the reasoning which prevails in the case of the trustee he ought to take the burden of showing the fact. It does not seem to comport with justice in such case to require the victim of his fraud to produce the proof necessary to locate the honest items in the mingled group and thus segregate for him what he claims no dishonesty of his own is attached to.

Accordingly, the defendant not having shown that the shares evidenced by certificate No. 236 for 500 shares of preferred stock and certificate No. 230 for 1,000 shares of common stock were lawfully acquired by him, I shall indulge the presumption that they are among the tainted shares.

This is enough to dispose of the contentions made with respect to these shares. But other considerations exist which appear ample to cancel the shares in question, even though they were paid for and lawfully acquired. Suppose a man fraudulently acquires from a corporation shares of its stock which should be canceled and at the same time lawfully acquires other shares, why should he not, if he puts a portion of the unlawful shares out of reach, be required to substitute for the alienated ones an equivalent number to be canceled from his other shares? In the case of *Draper v. Stone*, 71 *Me.* 175, a substitution of individually owned shares was required to be made by a trustee's estate in place of shares of a similar kind which the trustee had held in his fiduciary capacity and had sold and converted. The principle of the case is applicable with equal, if not greater, force in a case of the instant kind. The solicitor for the defendant appears to me to attach too great a significance to mere certificates of stock. Certificates of stock are themselves only evidence of shares. They are not the shares. The shares are aliquot parts or interests in the corporation and its

assets. The holder of a certificate evidencing 100 shares of stock has simply the written evidence that he owns 100 out of all the equal fractional parts to which that particular class of stock is entitled in the corporate enterprise. There is no segregation of the parts and an allocation of definite ones to any particular certificate. Therefore, when Sohland unlawfully acquired preferred and common shares of this corporation, it is a mistake to think of his acquisition of the property as of certificates number so and so. What he got was a certain aliquot interest in the corporation, evidenced by certain documentary proof called certificates. The identification of the various certificates and what went with them does not seem to me to be of much moment. The important thing is the aliquot interest he held in the corporation. If he unlawfully acquired such an interest, unidentified in the sense that a specific piece of tangible property can be identified, I can see no injustice in ordering its cancellation, no matter how many certificates had been shuffled through his hands. Unless this be so, a man might fraudulently obtain from a corporation, say, a one one-hundredth interest in its ownership and if he also acquired a like one-one-hundredth interest lawfully, by the simple trick of disposing of the certificate evidencing the fraudulent interest, forever balk the corporation from restoring its *status quo ante*.

The equities of third persons are not involved here. The question is one solely between Sohland and the corporation, and being confined to them the cancellation of the two certificates in question should be decreed along with the other certificates mentioned in draft No. 1, about which no question has been raised.

Note.—On appeal the decree of the Chancellor was affirmed. See *post p.* 431 for report of the opinion of the Supreme Court.