Joseph MUSLER, Plaintiff,

v.

Victor GEORGEFF, et. al. Defendants,

Victor Georgeff Third–Party Plaintiff,

v.

Jacqueline Musler, et. al., Third-Party Defendants.

No. CIV.A. CCB00CV3062.

United States District Court, D. Maryland.

Dec. 2, 2002.

Laurence J. Ochs, Law Office, Washington, DC, for Plaintiff.

Ronald H. Jarashow, Franch Jarashow Burgmeier and Smith PA, William F. Jones, Tho Law Offices of William F. Jones, Kathleen Duckett McCann, Annapolis, MD, Manuel Ramos, Law Office, Sunny Isles Beach, FL, David J. Cynamon, J. Thomas Lenhart, Gregory J. Philips, Shaw Pittman LLP, Washington, DC, Cheryl L. Rainville, Stephen D. Poss, Goodwin Procter LLP, Boston, MA, Denise Esposito, Wilmer Cutler and Pickering, Washington, DC, Steven B. Gould, Law Office, Bethesda, MD, for Defendants.

## *MEMORANDUM*

BLAKE, District Judge.

Each party remaining in this action has moved for summary judgment. The issues have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, the motions for summary judgment of Joseph Musler, Jacqueline Musler, and AXENT Technologies

will be granted. Victor Georgeff's motion for summary judgment will be denied.

*Factual Background*

Jacqueline Musler ("Jackie Musler"), with help from her husband Joseph Musler, started a software company called Raxco in 1977. At that time, Raxco issued one thousand shares of stock to Jackie Musler for one thousand dollars. Initially, the Muslers ran Raxco out of their home, with part-time help from Jackie Musler's daughter, Sharon Maloney.

In 1978, the Muslers purchased a home in Port St. Lucie, Florida from a development company, Victory Construction, Inc. Victory Construction was owned by Victor Georgeff. Victor Georgeff and his wife, Virginia Georgeff, lived on the same street in Port St. Lucie as the Muslers.

In 1979, Joseph Musler agreed to buy six lots of undeveloped land from Victory Construction, in an area that was to be turned into an exclusive waterfront community. Musler paid $165,000 in cash and agreed to give Georgeff a promissory note for an additional $165,000. After the sale closed, Musler learned that a bridge connecting the lots to the mainland, which Georgeff said he would build, was not going to be built. As a result, Musler decided he wanted to renegotiate the terms of the deal. On March 2, 1979, Musler sent a letter to Georgeff, which Georgeff signed, indicating that Georgeff would cancel the promissory note, and in exchange, Musler would promote Victory Construction properties when certain circumstances presented themselves.

The content of the agreement memorialized in this letter is in dispute. Georgeff contends that the promissory note was canceled in exchange for one hundred and fifty shares of Raxco stock. Musler contends, as the March 2, 1979 letter indicates, that the promissory note was canceled in exchange for Musler performing promotional activities on behalf of Victory Construction.

While Musler's account of this agreement is supported by the March 2, 1979 letter, Georgeff's description of this arrangement is supported by what appears to be a Raxco stock certificate for 150 shares. (Georgeff Opp. Ex. 1.) The certificate bears the signatures of both Jackie Musler as Secretary and Joseph Musler as President of Raxco. It is dated April 17, 1979. It bears the name of Victor Georgeff. If the certificate is a valid stock certificate, there is no other explanation for how Georgeff came to own 150 shares of Raxco.

The Muslers contend that the document which purports to be a stock certificate, is not. Rather, they contend that in the spring of 1979, they were running a campaign to raise funds for Raxco. As a part of this campaign, they had "promotional certificates" made up, which they each signed, that they mailed to potential investors to entice them to buy stock in Raxco. The Muslers contend that the certificate Mr. Georgeff has was one of these promotional certificates.

In the early 1980s, Victory Construction and the Georgeffs were the subject of an IRS audit for the years 1978, 1979, and 1980. One of the subjects of the audit was the 1979 land sale between Georgeff and Musler. The IRS took the position, based on the March 2, 1979 letter, that the $165,000 promissory note from the land sale was canceled by being "booked" as a commission to Mr. Musler. (Jos. Musl.2d Mot. Ex. 19 at RR103.) The result of recording the transaction in this way is that Mr. Georgeff, or Victory Construction, still could have been responsible for $330,000 worth of gross receipts from this transaction, subject to tax. Mr. Georgeff, however, argued that he had no intent to collect the $165,000. Mr. Georgeff's attor-

ney and the IRS then reached an agreement that there was never an intent to collect on the promissory note, so the purchase price of the land was only $165,000. (*Id.*) As a result, Mr. Georgeff only had to pay taxes on $165,000 from the sale of the six lots. As a part of the agreement, the government did not seek a fraud penalty against the Georgeffs. (*Id.* at RR109.) No evidence has been submitted which indicates that the IRS was ever told that the $165,000 of indebtedness was exchanged for 150 shares of Raxco stock. The Tax Court accepted this agreement between the government and Mr. Georgeff's attorneys, and adopted it as a part of the court's findings of fact. (*Id.* Ex. 24., Ex. 25.)

In 1988, Raxco was purchased by another company, which then began operations as "Raxco, Inc" ("Raxco II"). All of Raxco's stock was purchased by Raxco II in this deal. The Muslers and their family members received approximately $19 million in this transaction. Raxco II subsequently went public. Through a series of mergers and acquisitions, the company that was Raxco II has now been acquired by AXENT Technologies, Inc.[1]

From 1980 until August of 2000, the Georgeffs took no action in connection with the stock they allege they own in Raxco. They kept the certificate in a filing cabinet, and would discuss the certificate from time to time, but made no inquiries about the company. In August of 2000, shortly after purchasing a home computer with an internet connection, Virginia Georgeff found information about Raxco on the internet. She then took that information to her attorney. Together they determined through online resources that Raxco had been sold for a substantial amount of money.

Victor Georgeff then called Joseph Musler and demanded a substantial sum of money for his shares in the company. This suit followed.

*Procedural Posture*

Joseph Musler filed a declaratory judgment action against Victor Georgeff and AXENT Technologies, to establish that Victor Georgeff was not a shareholder of Raxco, and is not a shareholder of AXENT. Victor Georgeff counterclaimed against Joseph Musler, and filed a cross claim against AXENT. Georgeff also filed a third-party complaint against Jacqueline Musler.[2] Each party has moved for summary judgment. For the reasons set forth below, summary judgment will be granted to Joseph Musler, Jacqueline Musler, and AXENT (the "Raxco parties") against Victor Georgeff. Georgeff's motion for summary judgment will be denied.

*Judicial Estoppel*

The Raxco parties argue that Mr. Georgeff should not be allowed to argue facts inconsistent with the position he adopted before the Tax Court under the doctrine of judicial estoppel. In his settlement with the IRS, Georgeff's attorney notes that the IRS "takes the position that gross receipts were understated by approximately $610,00 over the four year period." (Jos. Musl. Mot. Ex. 19 at RR102.) A part of this understatement was "$165,000 ... attributable to the amount owed by Musler and canceled as a commission...." (*Id.*) In short, the IRS took the position that the amount owed by Musler and canceled as a

---

**1.** After this litigation started, AXENT was renamed "Symantec ATI Corporation," to reflect that AXENT has been acquired by Symantec Corporation. For ease of reference, the court will continue to use the term "AXENT" to refer to this entity.

**2.** A third-party complaint was also filed against TA Associates, but was later dismissed without prejudice.

commission, was understated in gross receipts. To settle the dispute, the IRS conceded that "there was never any intent to collect" the $165,000 owed by Musler, and as a result the $165,000 would not be included in gross receipts. (*Id.* at RR103.) Had the IRS not made this concession, or Mr Georgeff not accepted it, Georgeff's attorney cautioned that "a court could conclude that it was paid for future services and accordingly could be deducted when, and if, services were performed." (*Id.*) As a result of this agreement, the IRS treated the land deal as if Mr. Musler had only paid $165,000 for the six lots of land, excluding the remaining $165,000 from Mr. Georgeff's income. The Tax Court adopted the settlement as its findings of fact. (*Id.* Ex. 24; 25.)

█ The Supreme Court has recently addressed the elements of judicial estoppel. *See New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The Court noted three factors which "inform the decision whether to apply the doctrine [of judicial estoppel] in a particular case." *Id.* at 750, 121 S.Ct. 1808. "First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal citations and quotations omitted). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751, 121 S.Ct. 1808.

█ Judicial estoppel is appropriate in this case. Victor Georgeff asserted in the settlement accepted by the Tax Court that the price for the six parcels of land was $165,000, because there was no intent to collect the other $165,000. (Jos.˙Musl. Mot. Ex. 19 at RR103.) It is not disputed that Mr. Georgeff was paid $165,000 in cash for the six lots. (*Id.* Ex. 2 at 219; Ex. 11.) His assertion here, that he was paid 150 shares of stock in Raxco, in addition to $165,000 in cash, is inconsistent with the assertion he made to the Tax Court. Therefore the first factor applies.

Second, the Tax Court adopted the settlement between the IRS and the Georgeffs as its findings of fact when it entered judgment in the dispute with the Georgeffs and Victory Construction. (*Id.* Ex. 19; Ex. 25; Ex. 26.) Thus, the second factor is met.

Third, allowing the Georgeffs to make inconsistent claims about the amount of income they received from this sale of land would be unfair. The Fourth Circuit has held that judicial estoppel is appropriate where the party makes a statement to a government agency inconsistent with an assertion in litigation with a private party. *King v. Herbert J. Thomas Memorial Hosp.,* 159 F.3d 192, 197–98 (4th Cir.1998). In that case, a woman who received disability benefits because the Social Security Administration adopted her statement that she was disabled was estopped from arguing in an age discrimination action that she was "able and competent" to work for her employer. *Id.* Here, Georgeff obtained a tax benefit from the IRS and the Tax Court through his assertion that he was paid only $165,000 for the six lots of land. (*See* Jackie Musler Mot. Ex. 19 at 39:6–14 (deposition testimony of Georgeff's accountant).) He now seeks to argue that he was paid $165,000 plus 150 shares of stock. Since Mr. Georgeff received an advantage for his statement to the Tax Court, were he to successfully assert an inconsistent statement in this litigation, "the risk of inconsistent court determinations would

become a reality." *New Hampshire*, 532 U.S. at 755, 121 S.Ct. 1808 (internal quotation omitted).

Mr. Georgeff contends that judicial estoppel should not be applied in this case because he "did what [his lawyers] told him to do without understanding the reasons." (Geo. Joint Opp. at 51.) This is not sufficient to defeat the application of judicial estoppel. Mr. Georgeff's attorney made the statements; as Georgeff's agent, this is sufficient to bind him. *See Advance Finance Co. v. Trustees*, 337 Md. 195, 652 A.2d 660, 663 (1995). Further, Mr. Georgeff signed the document containing the agreement, indicating that the terms of the agreement were acceptable. (Mus. Mot. Ex. 19 at RR110.) Signing the agreement precludes him from later asserting that he was ignorant of its contents.

Mr. Georgeff will therefore be estopped from asserting that he forgave the promissory note in exchange for Raxco stock.

■ Because of the application of judicial estoppel, Georgeff has not shown that he gave any consideration for Raxco stock. All he has is the stock certificate. "Stock certificates are not the property at issue but are only symbols representing ownership of the underlying shares of stock." *Lucas v. Lucas*, 946 F.2d 1318, 1323 (8th Cir.1991); *see also Baker v. Bankers' Mortgage Co.*, 135 A. 486, 488 (1926) ("Certificates of stock are themselves only evidence of shares. They are not the shares.").

■ The Delaware Constitution says that "No corporation shall issue stock, except for money paid, labor done or personal property, or real estate or leases thereof actually acquired by such corporation." Del. Const. Art. IX sec. 3; *see also* Del

Code Ann. tit. 8, §§ 152, 153 (listing methods of fixing consideration for different classes of stock to be issued). Raxco was a Delaware corporation. Thus, for Raxco to issue stock, the company must receive consideration. Generally, what counts as adequate consideration is within the sound discretion of the directors of the corporation, absent a showing of actual fraud. *Diamond State Brewery, Inc. v. De La Rigaudiere*, 17 A.2d 313, 316–17 (Del. 1941). However, showing that no consideration was paid for stock is sufficient to show actual fraud, such that the judgment of the directors is not conclusive. *Id.* at 317.

Whether there was consideration paid for the issuance of stock from Raxco is a fact question. *See Michelson v. Duncan*, 407 A.2d 211, 223 (Del.1979). Victor Georgeff is judicially estopped, however, from arguing that he provided consideration as a part of the 1979 land deal with Joseph Musler, and he has offered no evidence of any other consideration that may have been paid. Therefore, there is no "genuine issue of material fact" about whether Victor Georgeff paid consideration to Raxco for stock. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Dorsey v. Ruth*, 222 F.Supp.2d 753, 756 (D.Md. 2002). Summary judgment on the question of whether Victor Georgeff was a shareholder of Raxco will thus be granted in favor of Joseph Musler, Jacqueline Musler, and AXENT.[3]

*Georgeff's Motion for Summary Judgment*

■ Georgeff contends that he is entitled to summary judgment on a number of grounds, each without merit. First, he

---

**3.** Because the Raxco parties' motions for summary judgment will be granted on this ground, the court does not consider the other arguments made by these parties that Geor-

geff's claims are barred by laches or the statute of limitations, or that the parol evidence rule bars collateral testimony about the March 2, 1979 letter.

asserts that because he holds a document that purports to be a stock certificate, he was a shareholder of Raxco. (Geo. Mot. at 4–7.) It is true that possession of a stock certificate issued by a corporation is evidence of ownership of stock in that corporation. *See e.g., Baker,* 135 A. at 488. However, possession of a stock certificate is just *evidence* of stock ownership, not more. A corporation still must receive consideration before it can issue stock. Del. Const. Art. IX sec. 3; Del Code Ann. tit. 8, §§ 152, 153. Because Mr. Georgeff is estopped from asserting that he provided consideration for Raxco stock in the 1979 land deal, and has offered no other explanation for when he gave consideration for the Raxco stock he claims to own, he is unable to establish that he was a shareholder of Raxco.

Georgeff also argues that the "question of whether the recipient of the stock certificate paid anything for the stock or gave any consideration at all for it cannot be contested by anyone who was a participant in the transaction." (Geo. Mot. at 6.) In support of this proposition, he cites to *Morente v. Morente,* 2000 WL 264329 (Del. Ch. Feb 29, 2000). *Morente* simply does not stand for the proposition. In *Morente,* the sole owner of a corporation issued fifty shares of it to his son in what the father later alleged was a sham transaction. *Id.* at *1. When the son asserted his ownership of the shares, the father sued to have the transaction voided as a sham, because his son did not give consideration for them. *Id.* The court held that the father had acquiesced to the transaction, and, therefore, could not challenge that transaction later.[4] *Id.* at *2. The proposition the case stands for, then, is not that a participant in a transaction cannot challenge it later, but that someone who acquiesces to the transfer of stock cannot later challenge that

transfer. But, as discussed above, Georgeff is estopped from asserting that Joseph Musler transferred stock in exchange for land. Therefore, Mr. Georgeff has provided no evidence that Mr. Musler acquiesced in a transfer of Raxco stock. For that reason, *Morente* is inapplicable.

Georgeff also advances a number of arguments that he was owed a duty by the Raxco parties which was breached. (Geo. Mot. at 8–14.) These arguments all depend upon the premise that Mr. Georgeff was a shareholder of Raxco. As discussed above, this premise is faulty. For that reason, these arguments fail. For the above reasons, Mr. Georgeff's motion for summary judgment will therefore be denied.

*Conclusion*

Because the court grants summary judgment against Georgeff on the question of whether he was a shareholder of Raxco, the claims by AXENT Technologies against Joseph Musler and Jacqueline Musler are moot. Further, Joseph Musler's claim against AXENT Technologies is moot. Therefore, AXENT's motions for summary judgment against Joseph Musler and Jacqueline Musler will be denied as moot.

In addition, Joseph Musler's claim against AXENT is also mooted. For that reason, the court will grant summary judgment on this claim, in favor of AXENT.

A separate Order follows.

**ORDER**

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that

---

4. In the alternative, the court held that the doctrine of unclean hands prevented the father from challenging the fraudulent transaction he had engineered. *Id.* at *3.

(1) Joseph Musler's motions for summary judgment (docket numbers 79 and 98) are **granted**;

(2) Jacqueline Musler's motion for summary judgment on Victor Georgeff's claims (docket number 101) is **granted**;

(3) AXENT Technologies' motion for summary judgment (docket number 99) is **denied as moot**;

(4) Jacqueline Musler's motion for summary judgment on the cross claim of AXENT Technologies (docket number 102) is **denied as moot**; .

(5) Victor Georgeff's motion for summary judgment (docket number 103) is **denied**;

(6) the court, on its own motion, **grants** summary judgment in favor of AXENT Technologies and against Joseph Musler on Joseph Musler's claim;

(7) the Clerk shall send copies of this Order and the accompanying Memorandum to counsel of record; and

(8) the Clerk shall close this case.